UNION BANKING CO. *v.* TRUSCOTT BOAT MANUFACTURING CO.

1. EQUITY—JURISDICTION—BILL IN AID OF EXECUTION — DEBTOR AND CREDITOR—DEMURRER.

A bill in aid of execution lies in the courts of this State to avoid fraudulent transfers made by a bankrupt corporation, the affairs of which are in process of administration in the Federal courts of a foreign State. In cases where the bankruptcy court has jurisdiction the State court has concurrent jurisdiction with it. And the possession of the bankruptcy court determines whether it has jurisdiction. OSTRANDER, J., dissenting.

.2. SAME.

> *Held*, on demurrer, that objections raised to the pleading
> as stating a conclusion and to the question of good faith
> of subsequent creditors were not necessary to be consid-
> ered, and that if the averments of the complainant were
> established at the hearing it would be entitled. to relief
> in some form.

Appeal from Berrien; Bridgman, J.   Submitted Jan-
uary 14, 1915.   (Docket No. 87.)   Decided January 3,
1916.

Bill in aid of execution by the Union Banking Com-
pany against the Truscott Boat Manufacturing Com-
pany' and others.   From a decree overruling a de-
murrer to the bill, defendants appeal.   Affirmed.

*Stratton & Evans,* for complainant.

*Montgomery, Hart, Smith & Steere,* for defendant
Mann.

BIRD, J.   This bill in aid of execution is filed by com-
plainant, as a judgment creditor of the Truscott Boat
Manufacturing Company, to set aside a conveyance of
certain premises situate in the city of St. Joseph, made
by it to the National Boat & Engine Company, on the
theory that it was in fraud of its creditors.   Defend-
ant Mann demurred to the bill, and upon a hearing
thereof the demurrer was overruled.

The bill alleges that complainant on December 20,
1910, recovered a judgment for damages and costs in
the St. Joseph circuit court against the Truscott Com-
pany in the sum of $10,163.58, and that thereafter exe-
cution was duly issued out of said court and levied
upon said premises.   Then follows the usual allega-
tions in such a bill.   In addition to them, it is alleged
that the Truscott Boat Manufacturing Company in De-
cember, 1910, was engaged in manufacturing motor-

boáts in the city of St. Joseph; that it was then a going and solvent concern, and was the owner of real and personal property amounting to the sum of $100,-000, and that its indebtedness did not exceed $25,000; that, while its financial affairs were in this condition, it was induced to and did enter a merger of boat companies to be called the National Boat & Engine Company, a Maine corporation. The consideration therefor was preferred and common stock of the National Boat & Engine Company in the amount of $542,170, and first mortgage bonds of that company in the sum of $42,000. These stocks and bonds were turned over to and accepted by the stockholders of the Truscott Company in consideration of a conveyance of all of its corporate property. After said transfers of the Truscott Company, and the transfers of the other companies constituting said merger, the said National Boat & Engine Company executed a trust deed upon the entire assets conveyed to them to the Astor Trust Company to secure an issue of bonds of $3,000,000. Subsequently William H. Mann was substituted as trustee in place of the Astor Trust Company.

It is further represented that the said National Boat & Engine Company was declared bankrupt in the District Court of the United States for the District of Maine on or about the 15th day of September, 1911, and that such proceedings were thereafter had that one Walter I. Woodman was appointed trustee in bankruptcy of the estate of said bankrupt, and that the said Walter I. Woodman claims to be in possession of the real estate, the buildings, and manufacturing plant of the said Truscott Company in said city of St. Joseph. It is further charged that the Truscott Boat Manufacturing Company in and by said transfers divested itself of all of its property, and on information and belief it is charged that the National Boat & Engine Company was a corporation without capital, and that

it paid no consideration for said conveyances from the said Truscott Company, and that said transfers are fraudulent and void, and were made for the purpose of defrauding the complainant and the other creditors of the said Truscott Company, and delaying the collection of their judgments.  And the following relief is prayed for:

(*a*) "That the warranty deed whereby said premises were conveyed to the National Boat & Engine Company may be decreed to be null and void."

(*b*) "That said trust deed to the Astor Trust Company as trustee be decreed null and void so far as the premises in question are concerned."

(*c*) "That said Walter I. Woodman, trustee in bankruptcy, be decreed to have no interest whatever in the premises described in paragraph 2 of this bill of complaint, as trustee in bankruptcy of the National Boat & Engine Company, and that said Walter I. Woodman be enjoined from asserting any rights of possession or ownership over said premises, and especially the said Walter I. Woodman, as trustee, be enjoined by the final decree of this court from selling, mortgaging, or offering for sale the said premises, and from in any manner interfering with the sale of said premises pursuant to the final decree of this court."

(*d*) "That said William H. Mann, as successor in trust to the Astor Trust Company, be enjoined from asserting any right or control over said premises by virtue of said trust deed, and the said William H. Mann, as such trustee, be enjoined from the foreclosure of said trust deed, or taking any action whatever thereunder in any manner interfering with the sale of said property and conveyance to the purchaser under sale of a title free and clear of any claim or lien which said William H. Mann, as trustee, but for the said decree, might assert under said trust deed against said premises."

(*e*) "That said property described in the bill of complaint be decreed to be the property in fee simple of the Truscott Boat & Engine Company, free and clear from any claims of the National Boat & Engine Company, or of Walter I. Woodman, its trustee in bank-

ruptcy, and free and clear of any claims or liens of William H. Mann, as successor in trust to the Astor Trust Company, under said trust deed."

With a further prayer for general relief.

The grounds of demurrer are:

"(1) That the allegation in the sixteenth paragraph of said bill of complaint that the trust deed dated October 1, 1910, from the National Boat & Engine Company to the Astor Trust Company, is fraudulent and void, and constitutes a cloud upon the title of the premises in said bill of complaint described, is a mere conclusion of law, and that the said bill of complaint contains no allegations of fact upon which the complainant is entitled to any relief as against this defendant.

"(2) The said complainant in the twelfth paragraph of its said bill of complaint alleges that $42,000 of the bonds of the National Boat & Engine Company, which were delivered to the stockholders of the Truscott Boat Manufacturing Company, were secured by the said mortgage to the Astor Trust Company under which this defendant is trustee as the successor of the said Astor Trust Company.

"(3) It does not appear from the said bill of complaint that this defendant, or his predecessor in said trust, had any notice of the claims of the complainant in said bill of complaint set forth prior to the delivery of the said Astor Trust Company mortgage, or prior to its recording, or prior to the issuance and sale of the bonds thereby secured.

"(4) It does not appear from the said bill of complaint that the bondholders, who have paid value for their bonds secured by the said trust deed to the Astor Trust Company under which this defendant is successor in trust, had any notice of the claims of the said complainant prior to the purchase by the said bondholders of their said bonds.

"(5) It does not appear from the said bill of complaint that the rights of the beneficiaries of the said Astor Trust Company mortgage, under which this defendant is successor in trust, are inferior to the rights claimed by the complainant in this cause.

"(6) The said complainant does not in and by its said bill of complaint offer to redeem the property on

which it claims a lien, and in which it can obtain its rights only by first paying the indebtedness secured by the deed of trust of the National Boat & Engine Company to the Astor Trust Company, under which this defendant is successor in trust.

"(7) It appears from the said bill of complaint that this court has no jurisdiction of the subject-matter of the said bill of complaint, but that the jurisdiction of said subject-matter is with the District Court of the United States in and for the District of Maine."

1. It is asserted in support of the demurrer on the question of jurisdiction that the court in which this proceeding was launched, it being a State court, had no jurisdiction to determine the title of the property in question, because the entire assets, including these premises, are in the possession and under the control of the bankruptcy court, and therefore are in the custody of the law. While counsel for the demurrer does not assert in so many words that, where the *res* is in the custody of the law, the case must be tried in the bankruptcy court, still his argument implies that. Counsel for complainant concedes that, where the bankruptcy court has possession of the *res*, it has jurisdiction to determine the question of title between the trustee in bankruptcy and an adverse claimant, but he also insists that, while this is true, the State court has concurrent jurisdiction to determine the same thing. We think the cases of *Bardes* v. *Bank*, 178 U. S. 524 (20 Sup. Ct. 1000), and *Whitney* v. *Wenman*, 198 U. S. 539 (25 Sup. Ct. 778), settle the controversy in favor of the contention of the complainant. In the *Bardes Case* the bankruptcy court did not have the custody of the property, which was the subject-matter of the suit, and the court held that the bankruptcy court did not have jurisdiction to entertain the action. In the *Whitney Case* the court by construction held that the property was in the possession of the bankruptcy court, and therefore held that the question of the title

to the property could be adjudicated by that court. Both opinions make it clear that the controversies might have been settled in the State court.

The same question arose in a case in the State of New York, where a creditor sought to enforce his chattel mortgage lien against property in the possession of the bankruptcy court. It was held by the Court of Appeals that the State courts had jurisdiction thereof. *Skilton* v. *Codington*, 185 N. Y. 80 (77 N. E. 790, 113 Am. St. Rep. 885). In the course of that opinion it is said (quoting from *Eyster* v. *Gaff*, 91 U. S. 521):

" 'The opinion seems to have been quite prevalent in many quarters at one time that the moment a man is declared a bankrupt the District Court which has so adjudged draws to itself by that act not only all control of the bankrupt's property and credits, but that no one can litigate with the assignee contested rights in any other court, except in so far as the Circuit Courts have concurrent jurisdiction, and that other courts can proceed no further in suits of.which they had at that time full cognizance, and it was a prevalent practice to bring any person who contested with the assignee any matter growing out of disputed rights of property or of contracts into the bankrupt court by the service of a rule to show cause, and dispose of their rights in a summary way. This court has steadily set its fact against this view. The debtor of a bankrupt or the man who contests the right to real or personal property with him loses none of those rights by the bankruptcy of his adversary. The same courts remain open to him in such contests, and the statute has not divested those courts of jurisdiction in such actions.'

"This statement is quoted with approval by Judge Gray in *Bardes* v. *Bank, supra.* Of course, we do not mean to assert that under the judgment of the State court the fund or property could be taken from- the possession of the bankruptcy court; the contrary is the law."

The jurisdiction of the bankruptcy court appears to turn upon the question whether or not it has the possession of the fund or property over which the controversy arises. If it has such possession, jurisdiction

follows. If it does not have possession, it is without jurisdiction. In cases of this character, where the bankruptcy court has no jurisdiction, the State court has jurisdiction. In cases where the bankruptcy court has jurisdiction, the State court has concurrent jurisdiction with it.

2. As to the other causes of demurrer aside from the one of jurisdiction, the chancellor, in passing upon it, observed that:

"It seems unnecessary to consider assignments number 1 to 6, inclusive. Such claims may or may not warrant a denial of the bill on final hearing after the evidence is all in."

After considering these causes of demurrer, we are led to the same conclusion. Should complainant establish the allegations of his bill to the satisfaction of the chancellor at the hearing, it will be entitled to some relief.

The order overruling the demurrer is affirmed.

STONE, C. J., and KUHN, MOORE, STEERE, and BROOKE, JJ., concurred with BIRD, J.

OSTRANDER, J. I think the court is without jurisdiction.

The late Justice MCALVAY took no part in this decision.