FISHER *v.* WADDELL.

1. SALES—WAIVER.

Where defendants agreed to pay 75% of the inventory "at wholesale cost, invoice prices," for such of plaintiff's millinery stock and fixtures as remained unsold on a certain day, but plaintiff failed to produce the invoices and insisted that the goods be appraised at wholesale cost prices, defendants, by participating in said appraisal, waived their right to have the appraisal based upon the invoices.

2. DAMAGES—STIPULATED DAMAGES—FORFEIT—MEASURE OF DAMAGES.

Although defendants placed with a bank a certificate of deposit for $1,000 as a "forfeit for damages" plaintiff might sustain if they failed to perform, such was not her measure of damages on defendant's breach of the contract, but the difference between what she should have received from defendants and what she actually received from the sale of the goods less her proper expense, was the true measure of her damages.

3. SAME—ACTUAL DAMAGES CONTROLLING WHERE ASCERTAINABLE.

The actual damages resulting from the breach of a contract, where readily ascertainable, are the measure of damages, rather than the amount stipulated in the contract as a "forfeit," which in such case will be treated as a penalty and not enforceable.

Error to Eaton; Smith (Clement), J. Submitted April 9, 1924. (Docket No. 17.) Decided June 2, 1924.

Assumpsit by Ida Fisher against Thomas J. Waddell and another for breach of a contract of sale. Judgment for plaintiff. Defendants bring error. Reversed.

*Rosslyn L. Sowers* and *Elmer N. Peters*, for appellants.

*Ernest G. Davids* and *Emerson R. Boyles*, for appellee.

WIEST, J.   Defendants wanted plaintiff's millinery shop for a butcher's shop and, on April 25, 1921, entered into an agreement with her to pay 75% of the inventory "at wholesale cost, invoice prices" for so much of her stock and fixtures as remained unsold on the 1st day of July following, and placed with a bank a certificate of deposit for $1,000 as a "forfeit for damages" she might sustain if they failed to perform.   When the time came to take the inventory defendants requested the production of the invoices and, although plaintiff had invoices covering some of her stock, she did not produce them and insisted the goods should be appraised at wholesale cost prices. An expert from a wholesale house where plaintiff had purchased a large part of her goods was selected by her to make the inventory and appraisal in her behalf, and a local milliner was selected by defendants.   The appraisers, assisted by defendants, started at work estimating the wholesale cost prices.   Defendants were present the afternoon such work was in progress but the next morning refused to go ahead with the inventory and appraisal unless made in accord with the letter of the contract.   Thereupon plaintiff, without any help from defendants, completed the appraisal, offered to perform and defendants refused performance.   Plaintiff sold the stock and brought this suit to recover the $1,000 stipulated to be paid by defendants in case they refused to perform.   The case was tried before a jury and plaintiff had verdict for $1,000.

Defendants are here by writ of error and claim they were relieved from their contract by the failure of plaintiff to produce invoices and insist that the ap-

praisal as made was but an estimate of wholesale cost prices and lacked the certainty they had stipulated for. Conceding the right of defendants to insist upon the production of invoices from which not only the date of purchases but the wholesale cost prices could have been ascertained, yet, when they proceeded with the inventory and appraisal the first day and participated therein through their representative and in person, they thereby waived the provision of the contract and could not the next day regain what they had waived by then insisting upon strict performance. When notified to take part in the inventory and appraisal defendants did insist upon production of the invoices but upon their nonproduction took active part for a time in the inventory and appraisal according to the best estimates of the disinterested appraisers selected by the parties. We think this was a waiver of the right to have the appraisal based upon invoices showing the wholesale cost prices and left to the jury the question of whether such appraisal fixed the wholesale cost prices.

The trial judge instructed the jury that plaintiff was entitled, if they found in her favor, to a verdict for the $1,000, stipulated to be paid by defendants in case they refused to perform. Defendants insisted at the trial, and claim now, that the $1,000 is in the nature of a penalty and not a stipulation for damages authorizing a judgment for such amount. This renders it necessary to set forth the contract provision:

"Also the said second parties for the purpose of showing their good faith in the completion of their part in the agreement shall this day deposit a certificate of deposit for one thousand dollars ($1,000) in First National Bank, Charlotte, Michigan, together with a copy of this agreement and should said second parties fail to fulfill their part of this agreement the said $1,000 shall be their forfeit to said party of the

first part for damages that she may sustain from the failure to complete this contract."

It is claimed the total amount of the inventory and appraisal, as taken, showed goods to the value of $4,911; that 75% of the appraisal amounted to $3,684; that plaintiff sold these goods by different methods, some at auction, some at retail and had a small part left, and received for the goods sold $3,398.37.    It is, therefore, claimed that the $1,000 stipulated as a forfeit for damages was entirely out of proportion to any actual damages sustained by plaintiff.    This computation leaves out of consideration the rent paid by plaintiff during the period she was retailing the goods, the value of her own services, the expense of help and other items of expense.

Plaintiff invokes the rule stated in *Jacquith* v. *Hudson*, 5 Mich. 123, and claims:

"This case comes fairly within that class of cases where the actual damages for breach of contract are uncertain in their nature, difficult to be ascertained, or impossible to be ascertained with certainty, by reference to any pecuniary standard, and where the parties themselves are more intimately acquainted with the circumstances, and therefore better able to compute the actual or probable damages."

The case does not come within the rule invoked. The damages for the breach of the contract can hardly be said to be uncertain in their nature and difficult to be ascertained.    When defendants refused to perform plaintiff had the goods.    To ascertain the damages she very properly went on and sold the goods. The difference between what she should have received from defendants and what she received from the sale of the goods, less the proper expense, constituted her damages.    Such damages were readily ascertainable and there was no occasion to resort to the amount stipulated in the contract and treat such amount as the damages irrespective of the actual loss.    Con-

sidering the character of the goods, the readiness with which the actual damages could be ascertained, and the provisions of the contract with reference to appraisal, we think the stipulation by defendants to pay $1,000 as a "forfeit" for damages plaintiff might sustain from their failure to complete the contract must be held a penalty and not enforceable as the measure of damages.

For the error in measuring plaintiff's damages by such stipulation instead of by the actual damages established by the proofs, the judgment is reversed, and a new trial granted, with costs to defendants.

CLARK, C. J., and MCDONALD, BIRD, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred.