### WILKINSON v. LANTERMAN

1. APPEAL AND ERROR—BRIEFS—ABANDONMENT.
   Failure to argue a point in brief on appeal indicates an abandonment thereof to the Supreme Court.

2. CONTRACTS—OFFER AND ACCEPTANCE—MODIFICATION OF WRITTEN OFFER.
   Record in action to recover $1,000 deposit made with written offer to purchase an apartment building for $50,000 and receive a warranty deed therefor *held*, to show purchaser's acceptance of change of offer from ''warranty'' to a ''receiver's'' deed by reason of subsequent conduct in dealing with defendant receiver who had asserted inability to give a ''warranty'' deed, by thereafter receiving the receiver's acceptance and other papers and by giving assurances they would go through with the deal.

3. SAME—CHANGES IN WRITTEN OFFER—CONSENT—EVIDENCE.
   While mere silence may not, under ordinary circumstances, be construed as indicating consent to changes in a written offer, the doing of affirmative acts may properly be regarded as evidencing such consent, and the opposite party to the agreement is entitled to rely thereon.

Liquidated damages and penalties, see 1 Restatement, Contracts, § 339, comment a; punitive damages, see § 342.

4. VENDOR AND PURCHASER—CONSTRUCTION OF LAND CONTRACT—FORFEITURE OF DEPOSIT—LIQUIDATED DAMAGES—PENALTY.

In determining whether a provision in a contract with reference to a forfeiture of a deposit in the event of failure on the part of a land contract purchaser to go through with a transaction is valid as an agreement to pay liquidated damages or void as an attempt to create a penalty for default on the part of such purchaser, the actual intent of the parties is immaterial but the question is rather what was actually done in the making of such stipulation.

5. CONTRACTS—ENFORCEMENT—UNCONSCIONABLE PROVISIONS.

While courts of justice will not recognize or enforce a contract, or any stipulation of a contract, clearly unjust and unconscionable, such principle will be applied only where it is obvious from the contract, and the whole subject matter, that the principle of compensation has been disregarded.

6. SAME—STIPULATED DAMAGES FOR BREACH.

One test as to whether a provision for stipulated damages for breach of a contract is enforceable is the reasonableness of the amount.

7. VENDOR AND PURCHASER—CONSTRUCTION OF LAND CONTRACT—STIPULATED DAMAGES—PENALTY—TIME OF MAKING CONTRACT.

In determining whether or not provision for forfeiture of deposit made by purchaser under a land contract shall be treated as liquidated damages or a penalty, the determination is to be made as of the conditions existing at the time the parties made the agreement.

8. DAMAGES—BREACH OF PURCHASERS AGREEMENT TO CONSUMMATE LAND CONTRACT—FORFEITURE OF DEPOSIT—LIQUIDATED DAMAGES.

Where broker who handled transaction for sale of realty belonging to receivership estate was to get half of deposit of $1,000 in case purchaser refused to consummate purchase of property for $50,000 and refusal would tend to delay ultimate sale of property and cause additional work and expense in connection with the receivership, such amount was properly regarded as liquidated damages as stated by the parties.

Appeal from Wayne; Webster (Arthur), J. Submitted April 11, 1946. (Docket No. 46, Calendar No. 43,294.) Decided May 13, 1946.

Assumpsit in common pleas court by Fay B. Wilkinson and wife against Lester C. Lanterman,

receiver of Michigan Associates, Incorporated, for return of deposit made on contract to purchase real estate. Judgment for plaintiffs. Defendant appeals to circuit court. Judgment for defendant. Plaintiffs appeal. Affirmed.

*John A. Allen,* for plaintiffs.

*Miller, Canfield, Paddock & Stone* and *C. Grant Barnes,* for defendant.

CARR, J. This case arises out of the breach of an agreement for the purchase of an apartment building at 12760 Appoline avenue, in the city of Detroit. On September 29, 1944, plaintiffs submitted to defendant, who was then receiver of Michigan Associates, Incorporated, owner of the building, an offer to purchase said property for the sum of $50,000, subject to plaintiffs being able to obtain a mortgage in the sum of $30,000. The offer further provided for delivery to plaintiffs, for examination, of an abstract of title and tax history of the premises or, in lieu thereof, a policy of title insurance and stipulated that if a marketable title could be conveyed the sale should be consummated within 30 days after delivery of the abstract, or policy. With said offer, plaintiffs made a deposit in the sum of $1,000, subject to the following provision: "If the offer is accepted by owner, the undersigned agrees to complete the purchase of said property within the time as above set forth, after delivery of abstract or title insurance policy, or forfeit to the owner the deposit made herein as liquidated damages."

On October 2d, following the making of the offer to purchase, plaintiffs went to the office of defendant

and the parties discussed the transaction. The offer as made referred to a conveyance by warranty deed. Defendant claims that at the interview on October 2d, he explained to plaintiffs that he could not execute any conveyance except a receiver's deed. Defendant testified in the trial court that plaintiffs agreed to the modification of the written offer in this regard. Plaintiff Fay B. Wilkinson testified in substance that he had no recollection of any such conversation between plaintiffs and defendant on October 2d. However, it is conceded that on the following day Mr. Wilkinson was in defendant's office again; that the subject was discussed; and in the presence of Mr. Wilkinson the change was made. Thereupon defendant, having received authority from the court to make the sale, signed the acceptance of the offer and delivered duplicates thereof to plaintiff Fay B. Wilkinson. Thereafter plaintiffs proceeded to obtain a commitment for the mortgage loan, as contemplated by their offer. The abstract of title was also delivered to them for examination. Early in November defendant claims that he communicated with plaintiff Fay B. Wilkinson with reference to closing the deal and was assured that plaintiffs would be ready within a few days.

November 24, 1944, plaintiffs wrote to defendant withdrawing their offer of September 29th, and demanding the return of the deposit. Defendant acknowledged receipt of the letter but refused to return the money, claiming the right to hold it as liquidated damages for breach of the agreement. Thereupon plaintiffs brought suit in the common-pleas court of the city of Detroit to recover the amount of the deposit and obtained judgment therefor. Defendant appealed to the circuit court where

the case was tried before the court without a jury and judgment rendered for defendant. Plaintiffs have appealed.

In his statement of reasons and grounds of appeal counsel for appellants claims that "The court erred in holding that plaintiffs * * * consented to changes made in their offer to purchase." In substance he renews the claim here in his statement of questions involved as set forth in his brief. However, the point is not argued. Based on a colloquy between counsel and the court the latter stated in his opinion: "Both counsel agree that the case turns upon the question of whether the deposit of $1,000 and the stipulation in the contract that it can be forfeited to the owner as liquidated damages is in fact a good agreement on the part of both plaintiff and defendant for liquidated damages or whether it amounts to a penalty."

The record before us indicates that on the trial plaintiffs did not press their claim that the substitution of the expression "receiver's deed" for "warranty deed" in the offer to purchase, under the circumstances as above stated, precluded the making of a binding contract. Failure to argue the point in their brief leads to the conclusion that it is not relied on in this court. In any event the record fully justifies the conclusion that plaintiffs consented to the change, their action in receiving and retaining defendant's acceptance of the offer following the making of the alteration, together with their conduct in obtaining the mortgage commitment, accepting delivery of the abstract for examination, and giving assurances to defendant that they would go through with the deal, indicating conclusively that they consented to the change with reference to the character of conveyance to be given by defendant. Such consent was clearly indicated by plaintiffs' conduct.

The case of *Rupright* v. *Heyman,* 67 Ohio App. 355 (36 N. E. [2d] 902), involved a situation analogous to the case at bar. The holding of the court appears from the syllabus which reads as follows:

"A person offering to purchase real estate is not entitled to the return of money placed in escrow under a written offer to purchase containing all the necessary terms of a contract to purchase and providing that the offeror place an amount of money in escrow to be returned 'only in case this offer is not accepted,' to which offer the owner adds in writing, 'owner will accept offer if bank or purchaser will finance balance,' where, by arranging with a bank for financing the balance, such offeror accepts the condition attached to the acceptance of the offer."

Of like import are *Robertson* v. *Tapley,* 48 Mo. App. 239; *Walter Wallingford Coal Co.* v. *Cuyahoga Builders Supply Co.,* 18 Ohio App. 488; *Klamut* v. *Cleveland Provision Co.,* 16 Ohio C. C. 475. Mere silence may not, under ordinary circumstances at least, be construed as indicating consent, but under circumstances of the character here involved the doing of affirmative acts may properly be regarded as evidencing such consent, and the opposite party to the agreement is entitled to rely thereon.

The principal issue in the case is whether the provision of the contract with reference to forfeiture of the deposit, in the event of failure on the part of plaintiff to go through with the transaction, is valid as an agreement to pay liquidated damages, or void as an attempt to create a penalty for default on the part of the purchasers. In stating his conclusions on the issue the trial court said in part:

"This question must be determined not on the basis of what transpired subsequently, but upon the basis of the conditions which existed at the time the parties made the agreement. When they entered into the agreement in September of 1944, it seems

to me that it cannot be said that $1,000 deposited on that occasion was an exorbitant or unreasonable amount to be agreed upon as stipulated damages where the sale itself involved $50,000. It was two per cent. of this amount, and in the same agreement, had the deal been consummated, the brokers would have received a commission of five per cent. As it is, the brokers, under the agreement, for their services, get one-half of the $1,000 stipulated to be the damages.

"When the parties were agreeing to this amount as stipulated damages in September, 1944 they could not foresee that the property itself would be subsequently resold for exactly $50,000. Neither could they anticipate the time, trouble, and expense which might be incurred in an endeavor to resell the property. Under such circumstances, it seems to me the court must hold that it was a reasonable agreement covering the subject of damages to stipulate that the $1,000 would be considered as the damages in case of a breach on the part of the purchaser."

In construing a contract provision of the character here involved the actual intent of the parties is immaterial. It is, in other words, a question of what was actually done in the making of such a stipulation rather than what was intended. The basic test to be applied was indicated by this court in the early case of *Jaquith* v. *Hudson,* 5 Mich. 123, 133. Speaking for the court in that case Justice CHRISTIANCY said:

"This principle may be stated, in other words, to be, that courts of justice will not recognize or enforce a contract, or any stipulation of a contract, clearly unjust and unconscionable.  *  *  *

"But the court will apply this principle, and disregard the express stipulation of parties, *only* in those cases where it is obvious from the contract

before them, and the whole subject matter, that the principle of compensation has been disregarded, and that to carry out the express stipulation of the parties, would violate this principle, which alone the court recognizes as the law of the contract.''

The rule as stated has been repeatedly recognized and applied in subsequent decisions of this court, including *Ross* v. *Loescher,* 152 Mich. 386 (125 Am. St. Rep. 418); *Central Trust Co.* v. *Wolf,* 255 Mich. 8 (78 A. L. R. 843); *Hall* v. *Gargaro,* 310 Mich. 693. In the case last cited it was said, ''A test as to whether a provision for stipulated damages is enforceable is the reasonableness of the amount.''

In the instant case the amount which the parties stipulated should be regarded as liquidated damages is certainly not unreasonable in view of the nature of the undertaking and the total consideration to be paid for the property. As the trial court pointed out in his opinion, the broker who handled the negotiations between the parties was to receive as compensation for services performed, under the express terms of defendant's acceptance, one-half of said deposit in the event that plaintiffs refused to consummate the purchase. The property was an asset of an estate in receivership and the making of the contract between the parties, and the refusal of plaintiffs to carry out their agreement, would tend to delay the ultimate sale of the property and to cause additional work and expense in connection with the receivership.

The conclusion of the trial court that the question at issue is to be determined ''upon the basis of the conditions which existed at the time the parties made the agreement,'' finds support in the opinion of this court in *Central Trust Co.* v. *Wolf, supra.* Stating the rule above quoted from *Jaquith* v. *Hud-*

*son, supra,* it was held that a deposit in the sum of $3,000 under a lease agreement, to be paid to the lessor in the event the lessee failed to perform conditions and covenants of the lease, resulting in a legal termination thereof, was stipulated damages rather than in the nature of a penalty. The court referred to the fact that in many cases the actual resulting damages have been considered in determining the question at issue, and said:

"Our own cases are chiefly to the effect that the fact situation on the question above stated should be developed as of the time of making the contract, not as of the time of breach."

See, also, 25 C. J. S. 661.

In the case at bar the property was sold by defendant in January, 1945, for $50,000. It does not appear, however, that the parties in making their agreement, over four months prior to such sale, had any information or knowledge that the property could be disposed of for that sum if plaintiffs breached the contract. The fact that the property was finally sold for the same price that plaintiffs agreed to pay cannot be regarded as establishing that the parties overlooked "the principle of compensation" in making their agreement. In view of the comparatively small amount of the deposit, and all the facts and circumstances attending the making of the contract, a finding that the principle referred to was disregarded is not justified.

In the case of *Biddle* v. *Biddle*, 202 Mich. 160, on which appellants rely, the sum of $15,000, which the agreement provided should be retained by way of liquidated damages in the event of breach, was determined to be a penalty. However, said sum was approximately five per cent. of the total consideration for the purchase. In *Fisher* v. *Wadell*, 227 Mich. 339, the parties undertook to provide for the

forfeiture of the sum of $1,000 as damages for failure to carry out an agreement for the purchase of property having a total value less than $5,000. The amount of the damages sought to be stipulated was clearly out of proportion to the aggregate amount involved in the transaction. As above pointed out, however, such is not the situation in the case at bar. On the record before us, we think that the trial court reached the correct conclusion.

The judgment is affirmed, with costs to appellee.

BUTZEL, C. J., and BUSHNELL, SHARPE, BOYLES, REID, NORTH, and STARR, JJ., concurred.