In re CONSTRUCTION DIVERSIFICA-TION, INC., Debtor.

Robert S. HERTZBERG, Plaintiff,

v.

NUNN BUSH SHOE COMPANY, a foreign corporation; and United States of America, Internal Revenue Service, Defendants.

Bankruptcy No. 81–05421–B.
Adv. No. AP–82–02648–B.

United States District Court,
E.D. Michigan, S.D.

Nov. 1, 1983.

Gerald Flagg, Farmington Hills, Mich., for plaintiff.

Thomas J. Tallerico, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This case grows out of controversy involving the construction of a store in the Northland Shopping Mall by Construction Diversification, Inc., (CDI) for defendant Nunn Bush Shoe Co. Plaintiff is the trustee in bankruptcy for CDI, which is currently involved in proceedings under Chapter 11.

CDI contracted with Nunn Bush to build the store, with completion originally set for March 20, 1981. In fact, the store was not completed until April 26, some 36 days after the scheduled completion date. The construction contract contained a provision assessing liquidated damages of $500 per day against CDI for each day that completion was delayed beyond the target date. As a result of the delay, Nunn Bush withheld $18,000 from the final contract payment as liquidated damages for 36 days of delay. The contract had called for a payment of $80,000 to CDI if the project had been completed on schedule.

The trustee has brought this action against Nunn Bush, alleging that Nunn Bush wrongfully withheld full payment under the contract, and further alleging that Nunn Bush is liable for the damages incurred by CDI as a result of its insolvency. The parties have joined several issues on cross-motions for partial summary judgment, to which the court now turns.

### Validity of the Liquidated Damages Provision

Nunn Bush has moved for partial summary judgment with respect to plaintiff's allegation that the liquidated damages provision is void and unenforceable, and seeks a

declaration that the provision is in fact valid and enforceable. Plaintiff has filed a cross motion for partial summary judgment, seeking a declaration that the provision is void.

■ Liquidated damages provisions are valid and enforceable elements of construction contracts under the law of Michigan if the amount of such damages is a reasonable estimate of the actual damages and the latter cannot be predicted with accuracy at the time of formation. *Moore v. St. Clair County,* 120 Mich.App. 335, 328 N.W.2d 47 (1982). The question of the reasonableness of the amount to which the parties have stipulated is one of law for the court to answer, *id.* at 339–40, 328 N.W.2d 47.

Plaintiff has argued that no Michigan court has ever upheld the enforcement of a liquidated damages provision where the amount sought to be withheld is greater than 2% of the total contract price. To this end, plaintiff has cited a number of Michigan cases in which damages of 5% or more of the contract price were struck down as penalties and therefore unenforceable, *see e.g., Biddle v. Biddle,* 202 Mich. 160, 168 N.W. 92 (1918); *Fisher v. Waddell,* 227 Mich. 339, 198 N.W. 972 (1924). Plaintiff would have the court conclude as a matter of law that liquidated damages which amount to 22.5% of the total contract price are excessive and unenforceable.

■ None of the cases to which plaintiff refers sets an upper limit on the amount of liquidated damages, as a percentage of the total contract price, that is tolerable. Such a per se rule, which plaintiff attempts to glean sub silentio from the cases, would of course flatly contradict the established rule that liquidated damage provisions are to be evaluated according to their reasonableness, under the facts and circumstances of each case, *Wilkinson v. Lanterman,* 314 Mich. 568, 22 N.W.2d 827 (1946). Furthermore, reasonableness is a function, at least in part, of the accuracy with which such stipulated damages approximate the *actual damages* incurred by the party seeking enforcement of the liquidated damages provision. Reasonableness is not measured by comparing the amount of liquidated damages provision to the total amount of compensation due to the breaching party under the contract, because such liquidated damages are an approximation, a substitute for actual damages. Thus, the court denies plaintiff's invitation to compare the amount of stipulated damages withheld with the total contract price as a test of reasonableness, and finds no support in the Michigan case law for undertaking such a comparison.

■ The court is unwilling at this time to go the entire distance with defendant on this point, however, and conclude that the amount of damages withheld is reasonable as a matter of law. Plaintiff has alleged that defendant incurred rental fees of approximately $90 per day from the date of April 4 until April 26, during which time the store could not be occupied and used. In addition to this loss, defendant also suffered lost profits, and possibly the loss of goodwill that would have accrued to defendant had the store been prepared to open on the date of the opening of the entire Mall on April 4. The amount of such losses can only be guessed at with hindsight. It is not necessary that either party establish with certainty the amount of these speculative damages; indeed, it was the purpose of the stipulated damages provision to avoid this kind of guess work. Nonetheless, plaintiff's challenge to the reasonableness of the amount of damages withheld compels the court and the parties to make some sort of estimate from the available evidence, which would include such sources as defendant's history of profits since the store was opened. Against this estimate, the court will then compare the amount of damages actually withheld in order to determine if the latter amount was a reasonable approximation of the former. The court concludes that a material question of law remains with respect to the reasonableness of the amount withheld, and therefore denies without prejudice both cross-motions with respect to the issue of the reasonableness of the liquidated damages provision.

■ Plaintiff argues in the alternative that the liquidated damages should not have been withheld in this case because defendant was responsible for a substantial portion of the delay in the project. Michigan has long recognized the rule that liquidated damages are not apportionable between the parties to a contract according to the amount of delay attributable to each. Rather, if the party seeking enforcement of the liquidated damages provision is responsible in part for the delay, it can recover only its actual damages for that portion of the delay attributable to the other party, *Early v. Tussing*, 182 Mich. 314, 148 N.W. 678 (1914); *Grand Rapids Asphalt Paving Co. v. City of Wyoming*, 29 Mich.App. 474, 185 N.W.2d 591 (1971). In other words, under the settled law of Michigan, with respect to recovery of liquidated damages, it is either all or nothing.

■ This rule of non-apportionment creates a harsh result in a case where the party seeking enforcement of the liquidated damages provision is responsible only for a small portion of the delay. Such a party is deprived of enforcement of the provision, which is part of the bargained-for-exchange between the parties. Defendant alleges that this is just such a case, and that it is responsible for at most 4 or 5 of the 36 days of delay. Defendant also suggests that the cases from which the rule of non-apportionment is culled involved liquidated damages provisions that set a flat rate of damages, regardless of the length of the delay. This case, on the other hand, involves a provision in which the amount of damages is cumulative and proportional to the duration of the delay. Such a formula is on its face more reasonable than one imposing a flat rate, in light of the fact that defendant's losses, in the form of lost profits and additional expenses, increased during each day that the store was not completed. As noted above, the court has not yet determined whether the amount of $500 per day reasonably correlates with the actual amount of damages incurred by defendant. Nonetheless, the court concludes that in a case such as this, where the party is seeking enforcement of a per diem damages clause, the court will enforce the clause with respect to those days of delay that are attributable solely to the party resisting enforcement. The holding on this issue is that the parties contracted for liquidated damages on a daily basis. The court in accordance with the Michigan rule will not allow such damages if the party claiming them is in part responsible for the delay for a particular day. However, when the court is able to determine how many days of the total period of delay is attributable solely to the party resisting enforcement of the liquidated damage provision, the court will enforce the provision with respect to those days. The court holds that the non-apportionment rule simply does not apply to such a situation where responsibility for discrete days of delay can be apportioned under a per diem liquidated damages provision. The adoption of such provisions should be encouraged.

Such a rule, the court concludes, does not run afoul of the non-apportionment rule as it has been enunciated by the Michigan courts, and furthers the commendable policy of resort to liquidated damages provisions in contracts of this kind where actual damages evade reasonable prediction. The ascertainment of actual damages resulting from delay is a tricky question even after the fact, let alone prior to the commencement of construction. Liquidated damages provisions provide a clear rule for the efficient resolution of disputes that would inevitably arise concerning the amount of actual damages that were incurred as the result of delay.

The court concludes that there yet remains a material question of fact concerning the amount of delay that is attributable to each party. As a result, both cross-motions for summary judgment on the issue of the validity of the liquidated damages provision are denied. This issue can be resolved only upon the submission of further evidence concerning the reasonableness of the amount of damages withheld, and the portion of delay attributable to each party.

## DAMAGES RESULTING FROM THE BANKRUPTCY OF CDI

■ Plaintiff has alleged that, by wrongfully withholding payment under the terms

of the construction contract, defendant breached the terms of the contract. As a result of this breach, CDI went into bankruptcy, and incurred substantial damages that were attributable to insolvency. Plaintiff now claims that he is entitled to recovery of those damages from defendant. In other words, all financial losses attributable to CDI's bankruptcy, such as lost profits, lost goodwill, losses resulting from inability to obtain credit, and attorneys' fees should be borne by defendant as the party responsible for placing the final straw on CDI's back.

The familiar rule of *Hadley v. Baxendale,* 9 Exch. 341, 156 Eng.Rep. 145 (1854) under which a party suing for breach of contract is entitled only to those damages that arise naturally and foreseeably from the breach or those that were in the contemplation of the parties at the time of formation of the contract, is applicable in Michigan, *Kewin v. Massachusetts Mutual Life Ins. Co.,* 409 Mich. 401, 295 N.W.2d 50 (1980).

■ Plaintiff has stated that defendant made inquiries about CDI's financial condition prior to entering into the contract, and obtained a performance bond as assurance against CDI's bankruptcy prior to completion of the project. Plaintiff further states that CDI put defendant into possession of sufficient information to convince defendant that failure to make the contract payments would put tremendous financial pressure upon CDI, and substantially increase the risk of bankruptcy. Plaintiff concludes that bankruptcy was therefore a very foreseeable consequence of defendant's breach of contract, and that damages accruing to CDI as a result of the bankruptcy, were, one step removed, a foreseeable result of the breach. Plaintiff argues that those damages are now recoverable under the rule of *Hadley v. Baxendale.*

A similar claim arose in the case of *Held Construction Co. v. Michigan National Bank of Detroit,* 124 Mich.App. 472, 335 N.W.2d 8 (1983). The Court of Appeals, noting that "the financial ruin of a contracting corporation or its officers is plainly not a consequence arising naturally from a breach of contract," *id.* at 10, determined that the damages resulting from plaintiff's bankruptcy were not reasonably foreseeable at the time that the contract was formed, and concluded that such damages were not recoverable.

In this case, plaintiff alleges that defendant had sufficient information to put it on notice that a breach of the contract would substantially increase the risk of CDI's insolvency. Under the reasoning of *Held,* plaintiff might be entitled to go forward with his prayer for recovery of those damages that are attributable to CDI's bankruptcy. The plaintiff would have to show that those damages were in fact within the contemplation of the parties to the contract, or that they arose naturally from the breach. The court concludes, however, that recovery of this particular kind of damage raises serious problems of public policy.

As plaintiff's brief points out, small contractors were going bankrupt at a greater rate than usual during the recession of the last couple of years. Such firms were particularly vulnerable to high interest rates and the decline in construction that accompanied the recession. These factors were largely beyond the control of the construction firms themselves; even less so are they attributable to the entities that employed the services of such firms. Nonetheless, one of the hazards of doing business during this time, either as a small contractor, or as a purchaser of constructions services, was that the contractor would become insolvent and unable to complete its performance under the contract.

The relief requested by the trustee in this case would impose an altogether greater risk upon those entities that sought the services of the marginally solvent construction firms. In the event that the purchaser, even acting in good faith, breached its obligation to make payments under the contract, and the construction firm subsequently became insolvent, the breaching party might become liable under plaintiff's theory of recovery, not only for the amount of money wrongfully withheld, but also for the potentially tremendous consequential

damages that accompanied bankruptcy. Such a risk of exponentially-increased liability would very likely deter such purchasers from entering into contracts with small firms. The small firms, already buffeted about by the adverse conditions in the national economy, would face a further obstacle in the reluctance of purchasers to open themselves up to this potential liability of tremendous magnitude. The likely result of such a rule would be to refuse to contract with small business firms and thus frustrate an important and long standing social goal of encouraging individual enterprise, small as well as large. This country has developed big businesses that began small and became larger as they succeeded. The rule proposed in this case would throw a road block in the future development of this type of economic system.

It could be argued that if the purchaser was totally shielded from liability for bankruptcy damages of the contractor, it could use the risk of bankruptcy as a lever to force the contractor to settle for less than the full amount due under the contract. In the absence of such an allegation of bad faith, an intentional breach of contract by which the breaching party sought to exploit the precarious condition of the contractor, the court concludes that bankruptcy damages should not be recoverable in an action for breach of contract. In *Kewin v. Massachusetts Life Ins. Co., supra,* the Court stated:

> "[In] a commercial contract situation . . . application of (the principle of *Hadley v. Baxendale*) generally results in a limitation of damages to the monetary value of the contract had the breaching party fully performed under it."

409 Mich. at 414–15, 295 N.W.2d 50.

This principle applies with even greater force in the instant situation, where the risk of liability for tremendous consequential damages would unnecessarily impair the ability of small contractors to obtain work.

In the instant case, plaintiff has made no allegations, nor has he offered any evidence that defendant acted in bad faith when it withheld payments which the contract terms permitted to be withheld although claimed by the plaintiff to be due under the contract. At most, defendant, as a part of its ordinary course of business, sought to enforce its rights under the liquidated damages provision of the contract, and in doing so, may have knowingly contributed to the financial failure of CDI. These facts are not sufficient, in the opinion of the court, to impose liability upon the defendant for the consequential damages incurred by CDI when it became insolvent. The plaintiff's prayer for recovery of damages relating to the bankruptcy of CDI is dismissed.

SO ORDERED.