# JUNE TERM, 1918.

## BIDDLE v. BIDDLE.

1. DAMAGES—VENDOR AND PURCHASER—LAND CONTRACTS, BREACH OF—LIQUIDATED DAMAGES—PENALTY.

A provision in a contract for the sale of land providing that $15,000 paid on the execution of the contract should be considered as liquidated damages for nonperformance thereof, was properly held to be a penalty; it appearing that the vendor had not been out of possession, that the land had increased in value more than the amount of such payment, and that another contract had since been made for the sale of the property at an increased price.

2. SAME.

On the breach of such contract the vendor was equitably entitled to actual damages for money paid for a survey, abstract, and attorneys' fees, but not interest on the purchase price; there being no proof of actual damages by reason of the land being withheld from the market.

3. COURTS—STATE COURTS—EQUITY—JURISDICTION—BANKRUPTCY.

The State court has jurisdiction to administer a fund in the hands of a trustee, the title to which is claimed by a trustee in bankruptcy to belong to the bankrupt.

4. LIENS—VENDOR'S LIEN—PURCHASE PRICE—BROKERS.

Where the vendor and vendee in a land contract agreed that the vendee should pay the entire commission of the broker as part of the purchase price, on the making of a payment and executing a mortgage, the vendor's equitable lien for the purchase price would attach in favor of the broker on the signing of the contract, but where the vendee's rights were forfeited for failure to make payment and execute mortgage the lien could not be enforced.

5. EQUITY—TRUSTS—CONSTRUCTIVE TRUSTS—FRAUD.

Where money or property has been taken from its owner by fraud and deceit, it is impressed with a constructive

trust, and when clearly traced may, and should be, by a court of equity, returned directly to its owner.

6. CORPORATIONS—STOCKHOLDERS—TRUSTS—CONSTRUCTIVE TRUSTS —INSOLVENCY—FRAUD.

Stockholders fraudulently induced by an officer of a corporation to advance money to make a payment on land were equitably entitled to recover it as against ordinary creditors of the corporation; the land contract being forfeited and the.corporation becoming insolvent.

Cross-appeals from Wayne; Codd, J. Submitted January 8, 1918. (Docket No. 9.) Decided June 25, 1918.

Bill by Louisa Biddle against William S. Biddle and others for the partition of real estate. The Detroit Trust Company, as trustee, was authorized to sell certain property. On default of payments, an option contract was declared forfeited: On petition parties were permitted to intervene claiming title to $15,000 paid as first payment on said contract. From the order determining the parties entitled to the fund, all parties appeal. Modified.

*Henry M. Campbell,* for Biddle heirs.

*Sidney T. Miller* (*Miller, Smith, Canfield, Paddock & Perry,* of counsel), for Detroit Trust Co.

*Harold H. Emmons* and *William H. Wetherbee,* for intervener Newcomb.

*Ben C. Hughes,* for interveners Hughes and Chevrolet.

*Frank D. Eaman* (*Douglas, Eaman & Barbour,* of counsel), for interveners Meginnity and Stormfeltz-Lovely Co.

*Max H. Finkelston* (*James O. Murfin,* of counsel), for intervener Christie, trustee in bankruptcy of the Samuel A. Merchant Realty Co.

BIRD, J.   Primarily this suit was begun in the
Wayne circuit court to partition the Biddle estate, but
none of the issues of partition are involved in this con-
troversy.   The Detroit Trust Company, trustee of the
estate and holder of the legal title to the property to
be partitioned, received an offer in April, 1916, for a
farm owned by the estate, situate in Ecorse township,
known as the "Woodbridge farm."   On April 27, 1916,
by permission of the court, the trustee made a con-
tract with the Samuel A. Merchant Realty Company
to sell to it the "Woodbridge farm" consisting of about
208 acres for the consideration of $1,500 an acre.   The
contract provided that $15,000 should be paid down on
the execution of the contract, the balance of one-half
of the purchase price to be paid in 30 days or as soon
thereafter as a merchantable title could be delivered,
at which time the premises were to be deeded to the
Samuel A. Merchant Realty Company, upon receipt of
a mortgage on the premises for the other half of the
purchase price.   Certain paragraphs of the contract
of which special mention will be made are:

"(a) The said vendee, as part of the purchase price,
also agrees to pay all taxes, etc.,   *   *   *   and further
that at the time said mortgage is given, vendee will
pay the entire commission at the rate of 5 per cent. of
the entire purchase price, such payment being made to
Stormfeltz-Lovely Company and Norman Meginnity,
as their interests appear."

"(d) It is mutualy agreed between said parties that
said vendee shall have possession of said premises not
more than 30 days after the completion of the said
one-half cash payment; and if the said vendee shall
fail to perform this contract, or any part of the same,
the said vendor shall immediately after such failure,
have a right to declare the same void, and to retain
whatever may have been paid hereon, and all improve-
ments that may have been made on said premises, as
liquidated damages for nonperformance of this con-
tract, and as a consideration for the time during which

said property is withheld from the market because of this contract; time being of its essence."

In compliance with the terms of the contract the first payment of $15,000 was paid to the trust company, but no further payment was ever made by the Samuel A. Merchant Realty Company, and after some toleration as to payment, the contract was forfeited on July 12, 1916, by order of the court. This left $15,000 in the hands of the trust company, which furnishes the bone of contention in this controversy. On October 2d the S. A. Merchant Realty Company was adjudged a bankrupt and Clare L. Christie appointed trustee. Claims are made to the fund by the following named parties, all of whom, save the trust company, have been permitted to intervene in the proceedings: The Detroit Trust Company, as trustee of the estate; Howard R. Newcomb, Ben Hughes, Louis Chevrolet, Clare L. Christie, trustee in bankruptcy for the S. A. Merchant Realty Company, and the Stormfeltz-Lovely Company and Norman Meginnity, real estate brokers. The chancellor heard the respective claims of these parties and denied relief to all of them save the trust company. He held the provision of the contract authorizing the retention of the $15,000 as liquidated damages to be a penalty and refused to enforce it, but did apportion some part of it to the trust company in payment of its actual damages. From this order of the chancellor all of the parties appeal.

*Claim of Detroit Trust Company:* The chancellor construed the provision of the contract giving the trust company the right to retain the $15,000 as liquidated damages as a penalty and refused to enforce it. In reaching this conclusion the chancellor was aided by a written concession of the trust company filed in court to the effect that the farm, since making the contract, had increased in value more than $15,000. He was also cognizant of the fact that

he had been petitioned, since the forfeiture of the present contract, to consent to another contract in which it was agreed to sell the farm for $1,750 an acre. He was also aided by proof of the actual damages suffered by the trust company. With this and other general information as to value before him he was of the opinion that the amount stipulated as liquidated damages was so far out of the range of actual damages that it ought not to be enforced as an entirety. In this conclusion we are inclined to agree with him. We approve of his order allowing the trustee the following items of actual damages, $212.50 paid for a survey of the premises, $25 for an abstract, and $750 as attorney fees; but we are unable to agree with him in allowing the item of interest on the purchase price during the short period the premises were withheld from the market. There was no proof of actual damages by reason of the farm being withheld from the market. The premises were during all the time in the possession of the trustee and there was no proof of any loss or diminution of income therefrom nor of expense incident to giving the vendee possession. The item of interest will, therefore, be eliminated.

*Claim of Clare L. Christie, Trustee in Bankruptcy:* Whether the fund in court should be turned over to the trustee in bankruptcy depends upon two questions: (*a*) Whether any of the other interveners are entitled to a lien thereon, and (*b*) Whether the State court has jurisdiction to administer the fund. The latter question we think is decided in favor of the jurisdiction of the State court by the recent holding of *Union Banking Co.* v. *Manufacturing Co.*, 189 Mich. 698, citing cases.

*Claim of Stormfeltz-Lovely Company and Norman Meginnity:* These claimants are real estate brokers who negotiated the deal between the trust company and the Samuel A. Merchant Realty Company. The

contract executed by the parties provided that the vendee should pay the entire commission of 5 per cent. to these claimants as part of the purchase price when the mortgage was given. It is the contention of these claimants that when the contract between the vendor and vendee was signed a lien at once attached to the vendee's interest in the land in their favor; that by reason of the default of the vendee its interest in the premises was converted into the fund of $15,000, which is now in court to be disposed of, and in consequence thereof claimant's lien followed the interest of the vendee and attached to the fund. This position is based upon the equitable doctrine of vendor's lien, which it is asserted exists in this State. In support of this contention the case of *Dunton* v. *Outhouse,* 64 Mich. 419, is cited. It was there said by Mr. Justice CHAMPLIN that:

"The vendor's lien upon the sale of real estate has always been recognized in this State; the earliest reported case being that of *Carroll* v. *VanRensselaer,* Harr. Ch. 225. The doctrine, generally stated, is that the vendor of land who has taken no security, although he has made an absolute deed and acknowledged the receipt of the purchase price, yet retains an equitable lien for the purchase money, unless there be an express or implied waiver and discharge of it, which will be enforced in equity against the vendee, volunteers, and all others claiming under him with notice; that is, against all persons except *bona fide* purchasers without notice.

"The equity arises independent of contract, and it is therefore immaterial that the seller had no intention to reserve such a lien. 2 Sugd. Vend. & P. p. 675."

It is also held that:

"The lien exists in favor of a third person to whom the vendee, at the vendor's request, has agreed to pay a portion of the purchase money." 2 Jones on Liens (3d Ed.), § 1094.

And that this doctrine is applicable to executory

contracts as well as to absolute deeds. *Ortmann* v. *Plummer,* 52 Mich. 76; *Harris* v. *Brown,* 172 Mich. 164. Granting this contention to be sound, the claim must fail for two reasons, one being that the time has never arrived and cannot arrive when the lien can be enforced, because the brokers' commissions were not due until the first payment was made, and the mortgage given. While this agreement as to the time of payment would not prevent the lien attaching, it would prevent its enforcement. The other reason is that equities of those who furnished the money are far superior to those of the broker. For these reasons the lien of the brokers cannot and should not be enforced.

*Claim of Howard E. Newcomb:* It is claimed on behalf of Mr. Newcomb, and not denied, that he advanced $12,500 of the $15,000 payment made by the Samuel A. Merchant Realty Company to the trust company. That Mr. McCollum, an officer of the Samuel A. Merchant Company, solicited the money and represented to Mr. Newcomb that the first payment had been raised by subscription but that it was not available at the moment and that $15,000 must be had at once to comply with the contract. It is further claimed that Mr. Newcomb relied upon the truth of these representations and that they turned out to be false. The position of counsel is, that Mr. Newcomb parted with his money through the fraudulent representations of Mr. McCollum and that it should now be returned to him, it having been freed from the demands of the trust company. It appears from the testimony of Mr. Newcomb that he was a large stockholder in the Samuel A. Merchant Realty Company, that he visited the offices of the company three or four times a week, that he kept in close touch with its affairs, and that he had talked over the acquisition of the Woodbridge farm with Mr. McCollum. He testified that he relied on the statements of Mr. McCollum concerning the

subscriptions to the first payment, and that he later learned they were false.

A careful examination of Mr. Newcomb's testimony convinces us that while he was interested in the company, and consequently its success, and undoubtedly was actuated to some extent by the promised security and the prospective profits to be derived from the purchase, he relied upon and was moved to advance the money by the statement of Mr. McCollum that the money was subscribed to make the first payment. The fact that he was influenced to some extent by other considerations would not bar his right to recover the advancement if the statement of McCollum was the inducing cause, and he would not have parted with his money except for such representation. 19 Cyc. p. 407 and cases cited. We are, therefore, of the opinion that the facts bring the case within the rule that

"where money or property has been taken from its owner by fraud and deceit, it is impressed with a constructive trust, and when clearly traced, may, and should be, by a court of equity, returned directly to its owner." 3 Pomeroy on Equity Jurisprudence, § 1053; 2 Beach on Trusts & Trustees, § 707; *Morris* v. *Vyse*, 154 Mich. 253; *Dime Savings Bank* v. *Fletcher*, 158 Mich. 162; *Patek* v. *Patek*, 166 Mich. 446.

*Claim of Ben Hughes and Louis Chevrolet:* These claimants furnished $1,000 each toward the $15,000 fund, at the solicitation of Mr. McCollum. Both claim that statements were made to them by McCollum similar to those made to Mr. Newcomb. Their testimony, however, shows that they as well as Mr. Newcomb were influenced in some measure by other considerations in parting with their money, but both testified that they relied upon the representation of Mr. McCollum that the first payment had been subscribed.

It is conceded that Newcomb, Chevrolet, and Hughes furnished $14,500 toward this fund. It clearly ap-

pears that this fund was paid to the Detroit Trust Company as the initial payment on the contract. It further appears that the fund is now relieved from any legal demands of the trust company. In view of this showing we think the residue of the fund should go back to these parties in ratable proportions. Had they not furnished this fund in the first instance there would now be nothing to contend for, but aside from this consideration their equities appear to be much superior to those of the general creditors of the Samuel A. Merchant Realty Company.

*Claim of the Biddle Heirs:* Without intervening in the proceedings the Biddle heirs were represented by counsel in this court who filed a brief contending that the Biddle heirs were entitled to the fund. The point is made that counsel, who represents them, is not properly in court under the rules. The view we take of the case we think it is unnecessary to comment on this further than to say that the rights of the Biddle heirs have been taken care of under the contentions of the Detroit Trust Company.

After deducting the items allowed to the trust company the balance of the fund will be divided between Newcomb, Chevrolet, and Hughes in the same proportion that they contributed to it.

No costs will be allowed.

OSTRANDER, C. J., and MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.