# STATE OF MICHIGAN

# COURT OF APPEALS

ANTON, SOWERBY & ASSOCIATES, INC.,

        Plaintiff/Counter-Defendant-
        Appellant,

v

MR. C'S LAKE ORION, L.L.C.,

        Defendant/Counter-Plaintiff-
        Appellee,

and

FLAGSTAR BANK,

        Defendant-Appellee.

FOR PUBLICATION
March 12, 2015
9:05 a.m.

Nos. 317935; 321827
Oakland Circuit Court
LC No. 2013-132761-CH

Before: GLEICHER, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

The Commercial Real Estate Broker's Lien Act, MCL 570.581 *et seq.*, was enacted to protect the right of commercial real estate brokers to collect their contractually-negotiated commissions. The plaintiff commercial real estate broker complied with the act by placing a lien against property over which it had entered an exclusive listing agreement, which had been sold surreptitiously. Plaintiff subsequently violated the act's clear directive to release its lien once the buyer and seller funded an escrow account with an amount sufficient to cover the broker's claim. Plaintiff's continued refusal to release the lien created an invalid cloud on the buyer's title.

Plaintiff sought relief under the act but failed to name as a party defendant the seller who agreed to the listing agreement. As a result, plaintiff's challenges to the commission amount (and thereby the escrow account) could not be resolved by the circuit court. And plaintiff never clearly stated any objection that could be raised against the seller. Accordingly, the circuit court's summary dismissal of plaintiff's claims under the act and the denial of its motion to amend the complaint are supported by the record. The circuit court also properly granted summary disposition in the buyer's favor on its slander-of-title action. Moreover, plaintiff's legal challenges to the special damages awarded to the buyer lack merit. We therefore affirm.

-1-

# I. BACKGROUND

Plaintiff Anton, Sowerby & Associates is a licensed commercial real estate brokerage firm. Plaintiff entered a listing agreement with nonparty GAM Properties, L.L.C., providing plaintiff the exclusive rights to "sell, lease or exchange" property at 720 S. Lapeer Road in Lake Orion. The contract promised plaintiff 5 to 6% of the ultimate sale or lease price depending on certain factors. Plaintiff located a potential buyer for the property—defendant Mr. C's Lake Orion—and introduced Mr. C's agent to GAM. Plaintiff alleges that Mr. C's and GAM thereafter engaged in secret negotiations in an attempt to avoid paying plaintiff's commission.

During this period of secret negotiations, GAM defaulted on its mortgage and its lender secured the appointment of a receiver to continue the sale of the subject property. Mr. C's ultimately agreed to lease the property for $5,000 monthly with an option to buy. Mr. C's exercised its purchase option almost immediately and promised to pay $1,200,000, with a mortgage loan through defendant Flagstar Bank, and the receiver offered to settle plaintiff's commission dispute. A resolution was not reached, however, and plaintiff recorded a broker's lien of $60,000 (5% of the purchase price) against the property pursuant to the Michigan Commercial Real Estate Broker's Lien Act (CREBLA), MCL 570.581 *et seq*. Specifically, MCL 570.584(1) permits a commercial real estate broker to record a lien against the property if the broker is entitled to a commission under a written agreement. The receiver and Mr. C's proceeded with the sale, created an escrow account funded with $75,000 to satisfy plaintiff's claim, and requested that plaintiff release its lien in accordance with MCL 570.585. Subsection (3) of that statute mandates a broker's release of a lien if the parties to a sale escrow "an amount sufficient to satisfy" the lien. Plaintiff contends that neither Mr. C's nor the receiver informed it of the escrow account until after it filed suit. Accordingly, plaintiff refused to release its lien.

In its complaint, plaintiff asserted that it "requested documentation concerning the purchase price for the Property paid by Mr. C's. . . . That information has not been forthcoming. Therefore, the exact amount of the Lien will abide discovery of that information in this litigation." Plaintiff contended that it wanted to foreclose upon its lien. Notably, plaintiff filed suit against Mr. C's and Flagstar, but not GAM or its receiver. Mr. C's in turn filed a countercomplaint to quiet title in the property and accusing plaintiff of slandering its title.

Mr. C's subsequently sought summary dismissal of plaintiff's action and judgment in its favor on the countercomplaint, and requested special damages. Mr. C's contended that the plain language of the CREBLA required plaintiff to release its lien upon the creation of the escrow account and no exception existed. Plaintiff retorted that its claim actually sounded in breach of contract regarding the underlying exclusive listing agreement and therefore the CREBLA did not control its duty to release the lien. In response, Mr. C's emphasized that plaintiff had not joined the proper parties for a breach of contract action; plaintiff's contract was with GAM alone and yet plaintiff did not name that entity as a defendant. Plaintiff pointed to GAM's financial difficulties and the receivership to support its decision not to include GAM as a party defendant.

Ultimately, based on the plain language of the CREBLA, the circuit court summarily extinguished plaintiff's lien over the property. The court ordered that Mr. C's funds remain in escrow as the account was required under the statute to protect the commercial real estate broker. However, the court ruled that plaintiff had to file suit against GAM in order to collect the

escrowed funds. The court thereafter rejected plaintiff's reconsideration motions and requests to amend its complaint to add claims against GAM's receiver.

## II. SUMMARY DISPOSITION IN RELATION TO THE ESCROW ACCOUNT

Plaintiff contends that the circuit court erred in concluding that the escrow agreement between Mr. C's and the receiver discharged plaintiff's lien. Accordingly, plaintiff continues, the court erred in summarily dismissing plaintiff's claim for recovery. We review de novo a lower court's summary disposition ruling. *Rambin v Allstate Ins Co*, 495 Mich 316, 325; 852 NW2d 34 (2014). The propriety of the circuit court's ruling centers on its interpretation and application of the CREBLA, a question of law that we review de novo. *Tomecek v Bavas*, 482 Mich 484, 490; 759 NW2d 178 (2008). When interpreting a statute, a court's objective is to discern and give effect to the Legislature's intent based on the statute's plain and unambiguous language. *Wurtz v Beecher Metro Dist*, 495 Mich 242, 250; 848 NW2d 121 (2014).

Historically, real estate brokers had no guarantee of payment of their commissions. Brokers attempting to secure payment by encumbering the property were informed "that the equities of those who furnished the money [for the purchase] are far superior to those of the broker." *Biddle v Biddle*, 202 Mich 160, 166; 168 NW 92 (1918). This was true until the enactment of the CREBLA by 2010 PA 201.

A commercial real estate broker licensed in accordance with the Michigan Real Estate Broker's Act, MCL 339.2501 *et seq.*, may file a lien over property in accordance with the CREBLA. MCL 570.583. A commercial real estate broker's lien attaches to real estate if the broker has a written commission agreement under which the broker is entitled to a commission, and the broker records its lien before the property is actually conveyed. MCL 570.584(1). MCL 570.585 addresses the creation of a lien escrow account and the release of the broker's lien:

> (1) If a claim of lien recorded under [MCL 570.584] would otherwise prevent the closing of a transaction involving commercial real estate, the parties to the transaction shall, subject to subsection (2), establish an escrow account from the proceeds of the transaction in an amount sufficient to satisfy the lien. A buyer or seller shall not refuse to close the transaction because of the requirement of establishing an escrow account under this subsection. The money shall remain in the escrow account until the rights to the money have been determined by a written agreement of the parties, a judgment or order by a court of competent jurisdiction, or any other method agreeable to the parties.
>
> * * *
>
> (3) If an amount sufficient to satisfy a commercial real estate broker's lien is escrowed under subsection (1), the lien is extinguished and the real estate broker shall provide a release of lien that meets the requirements of . . . MCL 565.201 . . . [.]

Plaintiff argues that Mr. C's and Flagstar were not entitled to summary disposition because Mr. C's failed to comply with MCL 570.585, requiring "the parties to the transaction" to

establish an escrow account. Plaintiff maintains that it was "a party to the transaction," but did not agree to the escrow account. This interpretation is not supported by the statutory language.

MCL 570.582 provides definitions pertinent to the CREBLA. It defines "buyer," "claim of lien," "commercial real estate," "commercial real estate lien," "record," and "seller," but fails to define "parties," "transaction," or the phrase "parties to the transaction." The meaning of these terms are clear when read in the context of MCL 570.585.

MCL 570.585 provides that if a recorded claim of lien would prevent the "closing of a transaction involving commercial real estate, the parties to the transaction shall . . . establish an escrow account from the proceeds of the transaction in an amount sufficient to satisfy the lien." The CREBLA allocates rights and responsibilities to the parties in a real estate transaction. The licensed commercial real estate broker is given the right to record a lien, MCL 570.583; MCL 570.584, and the right to enforce the lien, MCL 570.586. MCL 570.585, on the other hand, addresses how the "parties to the transaction" shall address the lien, and allows the real estate transaction to close despite the lien's existence. Although plaintiff contends that the real estate broker is a party to the sales transaction, a real estate broker's right to a commission arises from a separate contractual agreement between the broker and the seller. The parties to the sale are the buyer and the seller. Moreover, MCL 570.585 provides that the "buyer" or "seller" shall not refuse to close the transaction because of the escrow requirement. If the Legislature had intended to include the commercial real estate broker as a party to the transaction, it would have further provided that the broker could not unnecessarily impose additional conditions on the lien to prevent the sale from occurring. Here, the parties to the real estate sales transaction were the receiver and Mr. C's. Plaintiff as GAM's commercial real estate broker was not a party to the sale. Accordingly, the receiver and Mr. C's were not required to confer with plaintiff before creating the escrow account.

That the broker's presence is not required to negotiate the escrow amount is further supported by MCL 570.584(9), which addresses the contents of the broker's lien claim. The broker is directed to identify the "amount for which the lien is claimed." MCL 570.581(9)(c). This information would then be available to the buyer and seller in the real estate transaction when funding the escrow account with "an amount sufficient to satisfy" the lien under MCL 570.585(1). The lien documents thereby protect the interests of the broker despite that it is not involved in the sales transaction or the creation of the escrow account.

Mr. C's and the receiver looked to plaintiff's recorded lien to determine the amount to place into escrow. Plaintiff listed the amount of its interest as $60,000 in the lien. Mr. C's and the receiver chose to provide a buffer and placed $75,000 in escrow. Mr. C's and the receiver complied with the CREBLA by escrowing the amount cited by plaintiff.

Once the amount cited in the lien is escrowed, "the lien is extinguished and the real estate broker shall provide a release of lien . . . ." MCL 570.585(3). Mr. C's and the receiver instigated the automatic extinguishment of the lien by creating the escrow account. Plaintiff was then required to file a lien release with the register of deeds. Plaintiff is seeking the protection of the CREBLA, all the while violating its provisions. And plaintiff's interpretation would require the statute to be rewritten. Escrowing the amount cited by the broker in its own lien documents would no longer require the extinguishment of the encumbrance. Rather, the lien figure would

be the starting point for negotiations, allowing the broker to hold the land sale hostage until its demands are met. The CREBLA was designed to protect the broker's right to collect the commission outlined in the brokerage agreement, not to allow the broker to punish the seller for shirking its contractual promises.

Accordingly, the circuit court properly granted summary disposition in favor of defendants. The lien was extinguished under the statute and the court was required to remove it.

## III. SLANDER OF TITLE

Plaintiff contends that in rendering its summary disposition ruling, the circuit court erroneously determined that the refusal to discharge the lien constituted a slander of title. Claims for slander of title were recognized at common law "as a remedy for malicious publication of false statements that disparage a plaintiff's right in property." *B & B Investment Group v Gitler*, 229 Mich App 1, 8; 581 NW2d 17 (1998). "In Michigan, slander of title claims have both a common-law and statutory basis." *Id*. To establish either, a claimant must show falsity, malice, and special damages. *Id.*; MCL 566.108.[1]

In *Wells Fargo Bank v Country Place Condo Ass'n*, 304 Mich App 582, 596; 848 NW2d 425 (2014), this Court provided the following guidance regarding the malice element:

> The crucial element is malice. A slander of title claimant must show some act of express malice, which implies a desire or intention to injury. Malice may not be inferred merely from the filing of an invalid lien, the plaintiff must show that the defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury. A plaintiff may not maintain a slander of title claim if the defendant's claim under the mortgage or lien was asserted in good faith upon probable cause or was prompted by a reasonable belief that the defendant had rights in the real estate in question . . . . [Quotation marks and citation omitted.]

Given this guidance, the malice necessary for a slander action does not exist when the offending party's actions rest on a rational, yet incorrect, interpretation of law. *Id*. at 598.

---

[1] The statute provides:

> No person shall use the privilege of filing notices hereunder for the purpose of slandering the title to land, and in any action brought for the purpose of quieting title to land, if the court shall find that any person has filed a claim for that reason only, he shall award the plaintiff all the costs of such action, including such attorney fees as the court may allow to the plaintiff, and in addition, shall decree that the defendant asserting such claim shall pay to plaintiff all damages that plaintiff may have sustained as the result of such notice of claim having been so filed for record.

The claimant also must show that the alleged slander caused special damages. *B & B Investment Group*, 229 Mich App at 8. "Special damages . . . include litigation costs, impairment of vendibility, and loss of rent or interest. *Id*. at 9 (citations omitted). Attorney fees may be awarded pursuant to MCL 565.108 and are not limited to the time before the title cloud was removed. *Id*. at 11. Rather, the statute contemplates that attorney fees will be awarded, in the court's discretion, for all costs involved in the action. *Id*.

In *B & B Investment Group*, 229 Mich App at 4, the plaintiff and the defendant entered into a business relationship to purchase real estate from mortgage foreclosure and sheriff's sales. During their relationship, a dispute arose regarding the disbursement of funds involving two properties unrelated to the litigation. *Id.* at 5. Unable to resolve their differences, the defendant filed claims of interest against seven other properties owned by the plaintiff. *Id.* The district court concluded that the defendant committed slander of title with malicious intent because it held no cognizable interest in those seven properties, knew it was improper to file such claims, and was advised not to file the claims. *Id*. at 5-6. In *Sullivan v Thomas Org, PC*, 88 Mich App 77, 80; 276 NW2d 522 (1979), the plaintiffs alleged that the defendant disparaged title by inappropriately filing a mechanic's lien out of revenge. This Court held that "the filing of an invalid lien may be a falsehood, even if the matter in the lien is correct." *Id*. at 82.

Here, the circuit court did not err by holding that the elements of slander of title were established as a matter of law. MCL 570.584(1) provides that a commercial real estate broker's lien attaches to real estate if: (a) the real estate broker has a written commission agreement; (b) the agreement entitles the broker to a commission; and (c) the lien claim attaches before the conveyance of the real estate occurs. Plaintiff had a written commission agreement with GAM, and the receiver became bound by the agreement following its appointment. Plaintiff was entitled to a commission under the listing agreement because it had the exclusive right to broker a sale and actually found the property's ultimate purchaser—Mr. C's. And plaintiff perfected its lien before the Mr. C's purchase was complete.

But conditions requiring release of the lien also existed. MCL 570.585(3) requires a real estate broker to release its lien once an amount sufficient to cover that lien is placed into escrow. Mr. C's and the receiver did so, triggering plaintiff's duty to release its lien. Even if Mr. C's and the receiver failed to notify plaintiff of the escrow account until after plaintiff filed suit, plaintiff could have withdrawn its action and avoided legal costs. Moreover, Mr. C's repeatedly advised plaintiff to pursue the lien against GAM. Plaintiff responded that the GAM receivership voided all contracts, and purposefully declined to bring GAM into the litigation. Indeed, the circuit court questioned why plaintiff failed to sue GAM, but plaintiff never provided an answer. Thus, plaintiff failed to demonstrate the validity of its continued lien, or to dispel the claimed malice in response to defendant's motion for summary disposition. See *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 693; 818 NW2d 410 (2012). Although the contents of the lien may have been correct, plaintiff failed to demonstrate that its lien was valid and not premised on a falsehood under the circumstances. *Sullivan*, 88 Mich App at 82.

Additionally, MCL 570.585 provides that if a sufficient amount to cover the lien is placed in escrow, the lien is extinguished and the real estate broker "shall release" the lien. Mr. C's and Flagstar exchanged emails with plaintiff's counsel attempting to resolve the litigation and requested that plaintiff discharge the lien. Despite these requests, plaintiff failed to do so.

Plaintiff contends that it had the right to contest defendants' compliance with the statute because it was not permitted to negotiate the lien amount. Indeed, slander of title is not established when premised on a rational interpretation of law. *Wells Fargo Bank*, 304 Mich App at 598. However, the record does not support plaintiff's contention that it was relying on any legal position in withholding its release. Plaintiff maintained its lien and subverted the court's rulings and orders even after the court granted summary disposition in Mr. C's favor and denied plaintiff's motions for relief from judgment and to amend its complaint. The circuit court held that the case was closed by final order, and the only outstanding issue was one of damages. Despite the court's rulings, plaintiff filed a witness list and attempted to engage in discovery by serving a set of interrogatories. It also failed to release the lien it had filed with the register of deeds.

In light of MCL 570.585, plaintiff could have discharged the lien in accordance with the statute to avoid any claim for slander of title, and proceeded in accordance with MCL 570.586 to seek to have the escrowed funds released or file a claim for breach of contract. Plaintiff's pursuit of these options would not have subjected it to a slander-of-title action. However, plaintiff's repeated failure to abide by the court's rulings and release the lien demonstrated malice. Accordingly, the court did not err in granting defendants' motion for summary disposition of the slander-of-title claim.

## IV. COMPLAINT AMENDMENT

Plaintiff also challenges the circuit court's denial of its motion to amend its complaint to add GAM's receiver as a party defendant. Under the CREBLA, a real estate broker "may bring an action to enforce the lien," but must "name as defendants all persons that, at the time the action is filed, have an interest in the commercial real estate." MCL 570.586(1)-(2). The action also "may include a claim on the contract from which the lien arises." MCL 570.586(3). The circuit court correctly determined that plaintiff's action against the purchaser of the property was extinguished when the purchaser participated in the creation of an escrow account based on the amount cited in the lien. Plaintiff's remaining challenge is to the correct calculation of its commission and that claim lies between the parties to the exclusive listing agreement.

MCR 2.118(A)(2) provides, "[A] party may amend a pleading only by leave of the court" and "[l]eave shall be freely given when justice so requires." Moreover, MCR 2.116(I)(5) demands that a court allow a disappointed plaintiff the opportunity to amend its complaint after summary disposition is granted under MCR 2.116(C)(8), (9), or (10), unless the evidence reveals that amendment would not be justified. And pursuant to MCR 2.206(A)(2)(b), "[a]ll persons may be joined in one action as defendants . . . if their presence in the action will promote the convenient administration of justice." A motion to amend may be denied because of undue delay, bad faith or dilatory motive by the moving party, repeated failures to cure deficiencies in previously allowed amendments, undue prejudice to the opposing party, and futility. *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997).

Here, plaintiff sought to add the receiver as a party defendant within the statute of limitations to bring its lien claim. See MCL 570.587(1) (establishing a one-year statute of limitations for CREBLA lien actions). The motion was filed in response to the court's summary dismissal of plaintiff's claims under MCR 2.116(C)(10). Plaintiff cursorily discussed the

contents of its claim against the receiver, by generally asserting that the actual amount of its commission as required by the listing agreement had not been adequately proven. However, amendments must be submitted in writing. MCR 2.118(A)(4). If a plaintiff does not present its proposed amended complaint to the court, there is no way to determine whether amendment is justified. See *Lown v JJ Eaton Place*, 235 Mich App 721, 726; 598 NW2d 633 (1999). This is especially true here as plaintiff never specifically described its challenge to the $60,000 commission figure. Absent the submission of the proposed complaint or a clear statement of claim, we discern no abuse of the circuit court's discretionary powers.

## V. SPECIAL DAMAGES

### A. BACKGROUND

After dismissing plaintiff's claim and concluding that Mr. C's had proven its slander-of-title count, the circuit court ordered the parties to proceed toward establishing Mr. C's "special damages." Mr. C's filed a motion for recompense of "all costs and attorney fees incurred" along with interest in relation to the slander claim. Mr. C's also requested costs and sanctions in connection with plaintiff's continued failure to release its lien in contravention of court orders. Plaintiff contended that Mr. C's motion was not the proper vehicle for the special damages request, contending that a damages trial had to be conducted. Plaintiff further contended that it could not be held in contempt because no court order specifically required it to release its broker's lien.

Following an October 2013 show cause hearing, the court ordered plaintiff to file a lien release. It also scheduled an evidentiary hearing to calculate Mr. C's special damages. Before the hearing, the parties submitted briefs disputing the legal scope of the special damages award. Specifically, plaintiff argued that Mr. C's could collect only those costs necessary to remove the cloud, a result achieved with the May 29, 2013 summary disposition judgment. Therefore, any costs accumulated in the assessment and collection of the damages award would not qualify. Plaintiff challenged any attorney-fee award to Flagstar. And plaintiff contended that Mr. C's was not permitted to rely on the slander-of-title statute as it raised a solely common-law claim. Despite having divergent opinions on the legal scope of the damages award, plaintiff did not dispute the reasonableness or accuracy of Mr. C's documents supporting the various elements that might be incorporated into the award.

The circuit court rejected plaintiff's challenges and awarded Mr. C's the full scope of its litigation costs. This included costs for which Mr. C's indemnified Flagstar. The special damages award totaled more than $20,000.

### B. ANALYSIS

Plaintiff now reiterates its claims that MCL 565.108 does not control, that Mr. C's damages were limited to the time before the summary disposition judgment cleared the title, and that Mr. C's was not entitled to recovery of the costs for which it indemnified Flagstar. These challenges all lack merit.

Damages are "compensation which the law authorizes for an injury inflicted." *Strong v Neidermeier*, 230 Mich 117, 122; 202 NW 938 (1925). General damages are those that the law

implies or that presumably accrue from the alleged wrong. *Kratze v Indep Order of Oddfellows*, 442 Mich 136, 148; 500 NW2d 115 (1993). Special damages arise from the events that transpired, not those implied by law, and may be awarded "if specifically pleaded and proved." *Id*. at 148-149. Michigan follows the "American rule," which prohibits an award of attorney fees unless a statute, rule, or contractual provision expressly provides to the contrary. *Watkins v Manchester*, 220 Mich App 337, 342; 559 NW2d 81 (1996). MCL 565.108 provides that a person found liable for slander of title may be required to pay the injured party "all costs of such action, including such attorney fees as the court may allow[.]"

Plaintiff contends that the circuit court erred by awarding costs and attorney fees because Mr. C's did not plead the statutory cause of action. Indeed, the counterclaim did not expressly identify whether it was premised on the statute or common law. However, in its motion for summary disposition, responses to plaintiff's motions for relief from judgment and to amend the complaint, motion to strike interrogatories, and the motion for an order to show cause, Mr. C's alleged that plaintiff's actions were wrongful and frivolous, reflected continued violations of court orders, and requested special damages, including costs and attorney fees. Thus, plaintiff was on notice that Mr. C's was requesting costs and attorney fees permitted by statute even absent a direct citation.

Plaintiff also alleged that costs and attorney fees could only be awarded for the time period during which the cloud remained on the title, i.e., before the summary disposition judgment entered. However, as noted, special damages in a slander-of-title action include litigation costs, such as attorney fees, and are not limited to the period before the title cloud is removed. *B & B Investment Group*, 229 Mich App at 11.

Lastly, plaintiff contends that the circuit court erroneously awarded Mr. C's recovery for costs and attorney fees remitted to Flagstar because it constituted a "double dip." The court did not rule on whether the legal services provided to Mr. C's and Flagstar were duplicative. However, plaintiff stipulated to the legal cost assessments without citing any potentially duplicative services. The circuit court correctly noted that Mr. C's mortgage documents required it to indemnify Flagstar for the costs incurred in this action, bringing those costs into Mr. C's special damages claim. Plaintiff does not challenge the court's interpretation of those contractual agreements, thereby precluding relief. See *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 388; 689 NW2d 145 (2004).

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood