*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

## STATE OF MICHIGAN

## COURT OF APPEALS

MORRIS DAVIS, EMMY GILLEN, JOSHUA
MARKOWSKI, LINDSAY MATTHEWS,
GABRIELLA PAGAN, LAURA RAYSON,
SHANNON SMITH, NEIL MEDDAUGH,
STEPHAN BARBER, DEVIN BROWN,
DOMINIQUE HARRISON, GEORGIA
HORNBROOK, TIFFANY HUMPHRIES,
TIMOTHY JACKSON, THOMAS LOCKETT,
ANTHONY MAGAHEE, MARK MILLER,
ARETHA WARE, SHARETA WATSON,
LATICE WILLIS, ADAM YOUNG, and EMEKA
AGU, also known as EMEKA EGU,

        Plaintiffs-Appellants,

v

BOYDELL DEVELOPMENT CO., INC.,
DENNIS KEFALLINOS, also known as
DIONYSIOS KEFFALINOS, FORT ROSA
PROPERTIES, LLC, IRON STREET
PROPERTIES, LLC, GRAND LOFTS, LLC,
LAFAYETTE LOFTS, INC., and WOODWARD
BUILDING PLAZA, INC.,

        Defendants-Appellees.

UNPUBLISHED
June 25, 2019

No. 344284
Wayne Circuit Court
LC No. 16-011635-CZ

MICHAEL BYRD, MARK CAMAJ, NORMA
DICKERSON, DANIELLE HARGO, CHRYSSA
HUNLOCK, RICHARD JORDAN, KEVIN
RIEDEL, KIMBERLY FISHER, TWOQUALA
STEVENS, KENNARD GOFORTH, DIONNE
MCKISSACK, JENNEE PIPPEN, and BENNIE
SCOTT, JR.,

        Plaintiffs-Appellants,

v

BOYDELL DEVELOPMENT CO., INC.,
DENNIS KEFALLINOS, also known as
DIONYSIOS KEFFALINOS, BOYDELL
BUILDING, LLC, BOYDELL COMPANY, INC.,
WOODWARD BUILDING PLAZA, INC.,
GRAND LOFTS, LLC, IRON STREET
PROPERTIES, LLC, GRAND HOLDINGS, LLC,
FORT ROSA PROPERTIES, LLC, and
LAFAYETTE LOFTS, INC.,

        Defendants-Appellees.

No. 344729
Wayne Circuit Court
LC No. 16-015807-CZ

---

CHARLES ALONGI, NAMIR ARMSTRONG,
WILLIAM BARKSDALE, RANDI BRANDT,
DUANE CROONS, KENNETH GREEN,
ROBERT HOWINSKI, NICO KROHN,
BRANDON PATTON, SHANEE LANDFAIR,
LAWRENCE MARTIN, CHRISTOPHER
RATCLIFF, JEFFREY RICHARDSON,
BRENDA SHELTON, ANGELA THORNTON,
DARYL THORNTON, BOGDAN VESPAN,
EDWANNA WHITE, and EDITH WOOLEN,

        Plaintiffs-Appellants,

v

BOYDELL DEVELOPMENT CO., INC.,
DENNIS KEFALLINOS, also known as
DIONYSIOS KEFFALINOS, BOYDELL
BUILDING, INC., BOYDELL COMPANY, INC.,
WOODWARD BUILDING PLAZA, INC.,
GRAND LOFTS, LLC, IRON STREET
PROPERTIES, LLC, GRAND HOLDINGS, LLC,
FORT ROSA PROPERTIES, LLC, and
LAFAYETTE LOFTS, INC.,

        Defendants-Appellees.

No. 344731
Wayne Circuit Court
LC No. 17-005162-CZ

---

Before: SAWYER, P.J., and O'BRIEN and LETICA, JJ.

PER CURIAM.

In Docket Nos. 344284, 344729, and 344731, plaintiffs[1] appeal by leave granted[2] the trial court's order granting summary disposition to defendants.[3] On appeal, plaintiffs argue that the trial court erred by granting summary disposition to defendants because the trial court erroneously held that the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq.*, barred plaintiffs' claims. Plaintiffs also argue that the trial court erred by failing to give plaintiffs an opportunity to amend their complaints after it granted summary disposition to defendants under MCR 2.116(C)(8). We affirm.

Plaintiffs were tenants and former tenants in defendants' residential rental buildings located in Detroit, Michigan beginning in 1997. Plaintiffs allege that defendants violated the MCPA by fraudulently entering into residential leases with plaintiffs without obtaining certificates of compliance that would permit them to do so. Docket Nos. 344284, 344729, and 344731 were consolidated at the trial court level and defendants moved for summary disposition under MCR 2.116(C)(8) and (C)(10) on the ground that the MCPA did not apply. Plaintiffs responded and argued that the MCPA did apply and that if the trial court granted summary disposition to defendants it should also permit plaintiffs to amend their complaints. The trial court granted summary disposition to defendants under MCR 2.116(C)(8) and refused to consider plaintiffs' request to amend their complaints because plaintiffs failed to file a written motion to amend and proposed amended complaints. This appeal followed.

Plaintiffs first argue that the MCPA applies to their residential leases with defendants. We disagree.

A trial court's summary disposition ruling is reviewed de novo. *Walters v Nadell*, 481 Mich 377, 381; 751 NW2d 431 (2008).

> A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a

---

[1] We will refer to the plaintiffs from Docket Nos. 344824, 344729, and 344731 collectively as "plaintiffs" throughout this opinion except in instances in which it is necessary to differentiate plaintiffs by their appellate docket number or individually.

[2] *Davis v Boydell Development Co, Inc*, unpublished order of the Court of Appeals, entered August 30, 2018 (Docket No. 344284); *Byrd v Boydell Development Co, Inc*, unpublished order of the Court of Appeals, entered August 30, 2018 (Docket No. 344729); *Alongi v Boydell Development Co, Inc*, unpublished order of the Court of Appeals, entered August 30, 2018 (Docket No. 344731).

[3] We will refer to the defendants from Docket Nos. 344824, 344729, and 344731 collectively as "defendants" throughout this opinion except in instances in which it is necessary to differentiate defendants by their appellate docket number or individually.

matter of law that no factual development could possibly justify recovery. When deciding a motion brought under this section, a court considers only the pleadings. [*Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999) (quotation marks and citations omitted).]

"Issues of statutory interpretation are reviewed de novo." *City of Riverview v Sibley Limestone*, 270 Mich App 627, 630; 716 NW2d 615 (2006). When the language of a statute is clear and unambiguous, this Court "will apply the statute as written and judicial construction is not permitted." *Driver v Naini*, 490 Mich 239, 246-247; 802 NW2d 311 (2011).

"The MCPA prohibits certain unconscionable, deceptive or unfair acts, practices, or methods in the conduct of trade or commerce." *De Bruyn Produce Co v Romero*, 202 Mich App 92, 110; 508 NW2d 150 (1993). The MCPA defines "trade or commerce," in relevant part, as "the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property." MCL 445.902(g). Thus, the MCPA applies to the rental of real property. See *id*; *De Bruyn Produce*, 202 Mich App at 110 (holding that the MCPA "defines 'trade or commerce' to include the rental of real property."). The MCPA does not apply, however, to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." MCL 445.904(1)(a). When determining whether this exception applies to a particular case, "the relevant inquiry is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Liss v Lewiston-Richards, Inc*, 478 Mich 203, 210; 732 NW2d 514 (2007) (quotation marks omitted). When broken down into its individual parts, " '[s]pecific' means 'having a special application, bearing, or reference; explicit or definite,' " and " '[a]uthorize' means 'to give authority or formal permission for; sanction.' " *Id*. at 212-213 (footnotes omitted). Finally, "[t]he party claiming the exemption bears the burden of proving its applicability." *Id*. at 208.

The Housing Law of Michigan, MCL 125.401 *et seq.*, states that "[u]nits in multiple dwellings or rooming houses shall not be occupied unless a certificate of compliance has been issued by the enforcing agency." MCL 125.529. The Housing Law of Michigan also grants municipalities the authority to "designate a local officer or agency which shall administer the provisions of the act." MCL 125.523. The Housing Law of Michigan additionally states that it "does not preempt, preclude, or interfere with the authority of a municipality to protect the health, safety, and general welfare of the public through ordinance, charter, or other means." MCL 125.534(8). Thus, the Housing Law of Michigan permits municipalities to designate an officer or agency to administer its provisions and it does not interfere with a municipality's ability to pass its own ordinances to protect the health, safety, and general welfare of the public. See MCL 125.523 and MCL 125.534(8).

Detroit Ordinances § 9-1-35(d)(11) provides, in relevant part, that "[t]he director of the buildings and safety engineering department, or his or her authorized local officials or designees, shall conduct inspections to obtain compliance with this article based upon" the Housing Law of Michigan and "any other applicable law or provision in the 1984 Detroit City Code regulating the maintenance, occupancy, and use of buildings, premises, or structures." The city of Detroit has also passed ordinances regulating when landlords of residential buildings must obtain certificates that permit them to rent their properties to tenants after inspection by the Buildings

and Safety Department. See Detroit Ordinances, § 9-1-81 ("The owners or agents of rental property shall register all such dwellings with the buildings and safety engineering department and obtain a certificate of registration as provided for in this section."); Detroit Ordinances, § 9-1-82 ("It shall be unlawful for a rental property required to be registered pursuant to section 9-1-81 of the 1984 Detroit City Code to be occupied without a certificate of compliance issued by the buildings and safety engineering department . . . ."). Detroit Ordinances §§ 9-1-19 and 9-1-20 control the penalties a landlord incurs for violations of the Detroit Property Maintenance Code, which encompasses Detroit Ordinances §§ 9-1-81 and 9-1-82. See Detroit Ordinances, §§ 9-1-19 and 9-1-20. Thus, the city of Detroit has passed ordinances, through the authority granted to it by the Housing Law of Michigan in MCL 125.523 and MCL 125.534(8), governing the certificates landlords must obtain before they can rent residential property and means to address violation of the regulations.

Plaintiffs claim that defendants violated the MCPA by failing to disclose to plaintiffs that defendants did not have certificates of compliance for their residential rental properties.[4] The city of Detroit, however, passed ordinances governing when landlords of residential rental properties must obtain certificates of compliance and the penalties a landlord faces for failing to do so. See Detroit Ordinances, §§ 9-1-19, 9-19-20, 9-1-81, and 9-1-82. Landlords in Detroit are not permitted to rent residential property without a certificate of compliance. See Detroit Ordinances, § 9-1-82(b) (establishing that residential rental property must have a certificate of compliance before it can be occupied). Furthermore, the Housing Law of Michigan grants municipalities, like Detroit, the authority to enforce its provisions through such ordinances. See MCL 125.523 and MCL 125.534(8). Thus, the general transaction of whether a landlord in Detroit may rent his or her residential property without a certificate of compliance is specifically addressed by Detroit's ordinances. See *Liss*, 478 Mich at 212-213. Finally, as stated above, when determining whether the MCPA's "specifically authorized" exception applies to a given case "the relevant inquiry is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Id*. at 210. The general transaction of a landlord leasing residential property in Detroit is specifically authorized by Detroit's ordinances and, therefore, the MCPA does not apply to the circumstances of this case even though "the specific misconduct alleged," leasing residential rental property without first obtaining certificates of compliance, is prohibited by Detroit's ordinances. See *id*. The trial court, therefore, did not err by granting summary disposition to defendants because the MCPA does not apply in the circumstances of this case. See MCL 445.904(1)(a); *Liss*, 478 Mich at 212-213.

Finally, plaintiffs argue that MCL 455.902(g), which defines "trade or commerce" under the MCPA, and MCL 445.904(1)(a), which establishes the MCPA's "specifically authorized" exception discussed above, show that the Legislature intended for the MCPA to apply to

---

[4] We note that plaintiffs refer to these certificates as "certificates of occupancy," but that the Housing Law of Michigan, MCL 125.529, and Detroit Ordinances § 9-1-82 only reference certificates of compliance. Thus, we use the term "certificates of compliance" throughout this opinion.

plaintiffs' claims. The Legislature is "presumed to intend the meaning that the statute plainly expresses." *Universal Underwriters Ins Group v Auto Club Ins Assn*, 256 Mich App 541, 544; 666 NW2d 294 (2003) (quotation marks and citation omitted). Additionally, the statutory interpretation canon of *in pari materia* "provides that laws dealing with the same subject . . . should if possible be interpreted harmoniously." *SBC Health Midwest, Inc v City of Kentwood*, 500 Mich 65, 74 n 26; 894 NW2d 535 (2017) (citation and quotation marks omitted; alteration in original). MCL 455.902(g) and MCL 455.904(1)(a) are both parts of the MCPA and, therefore, should be interpreted harmoniously when possible. See *id*. As discussed above, MCL 455.902(g) establishes the scope of the MCPA by defining "trade or commerce." This Court has previously held that "trade or commerce" under the MCPA applies to the rental of real property, *De Bruyn Produce*, 202 Mich App at 110. As similarly discussed above, however, MCL 445.904(1)(a) establishes that the MCPA does not apply to "specifically authorized" transactions and conduct. See MCL 445.904(1)(a). This Court has applied the "specifically authorized" exception from MCL 445.904(1)(a) to conduct covered by MCL 455.902(g) in the past. See *Liss*, 478 Mich at 212-215 (holding that residential home builders are included in "trade or commerce" for purposes of the MCPA, but that the MCPA did not apply because the defendants' conduct was specifically authorized). Thus, MCL 455.902(g) and MCL 445.904(1)(a) do not conflict, but instead work together to define the scope of the MCPA.

Finally, plaintiffs alleged that defendants committed fraud by failing to disclose their alleged lack of certificates of compliance when renting their properties to plaintiffs. When a plaintiff alleges fraud, he or she must meet the heightened pleadings standards of MCR 2.112(B)(1), which provides that "in allegations of fraud or mistake, the circumstances constituting fraud or mistake must be stated with particularity." "Generally, fraud is not to be presumed lightly, but must be clearly proved, and must be proved by clear, satisfactory and convincing evidence[.] It is for these reasons that our court rules create an enhanced burden to plead fraud with particularity." *State ex rel Gurganus v CVS Caremark Corp*, 496 Mich 45, 63 n 40; 852 NW2d 103 (2014) (citations and quotation marks omitted). When determining the claims a plaintiff has actually alleged in his or her complaint, however, "[i]t is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Adams v Adams*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007).

Plaintiffs alleged in their complaints that defendants committed fraud by failing to disclose their alleged failure to obtain certificates of compliance before renting their properties to plaintiffs. Plaintiffs' complaints, however, failed to include additional specific information or allegations. Accordingly, plaintiffs' complaints failed to meet the heightened pleading requirements to allege fraud. See *Gurganus*, 496 Mich at 63 n 40. Additionally, when read as a whole, the gravamen of plaintiffs' complaints was not that defendants committed fraud. Rather, the gravamen of plaintiffs' complaints was that defendants failed to obtain certificates of compliance, not that they committed fraud by failing to disclose this alleged failure to plaintiffs. See *Adams*, 276 Mich App at 710-711. Plaintiffs' fraud allegations amount to nothing more than creative pleading and an attempt to have the MCPA apply to their claims against defendants. As such, plaintiffs' fraud allegations are unpersuasive and were not sufficiently pleaded. See *Gurganus*, 496 Mich at 63 n 40; *Adams*, 276 Mich App at 710-711.

Plaintiffs' second argument is that the trial court erred by refusing to consider their request to amend their complaints. We disagree.

"The grant or denial of leave to amend pleadings is within the trial court's discretion" and "[t]his Court will not reverse a trial court's decision regarding leave to amend unless it constituted an abuse of discretion that resulted in injustice." *PT Today, Inc v Comm'r of Office of Fin & Ins Servs*, 270 Mich App 110, 142; 715 NW2d 398 (2006) (citation omitted). "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes." *Hayford v Hayford*, 279 Mich App 324, 325-326; 760 NW2d 503 (2008). "A trial court necessarily abuses its discretion when it makes an error of law." *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 208; 920 NW2d 148 (2018), oral argument on the application gtd 503 Mich 882 (2018). Additionally, the interpretation and application of court rules present questions of law to be reviewed de novo using the principles of statutory interpretation. *Lamkin v Engram*, 295 Mich App 701, 707; 815 NW2d 793 (2012).

As an initial matter, defendants' argument that plaintiffs waived the issue of whether they should be permitted to amend their complaints is unpersuasive. "A waiver is a voluntary and intentional abandonment of a known right." *Braverman v Granger*, 303 Mich App 587, 608; 844 NW2d 485 (2014) (citation and quotation marks omitted). Plaintiffs requested leave to amend the complaints in their response to defendants' motion for summary disposition. As such, they did not waive the issue of whether they could amend their complaints. See *id*.

When a trial court grants a motion for summary disposition under MCR 2.116(C)(8), (C)(9), or (C)(10), it "must give the parties an opportunity to amend their pleadings pursuant to MCR 2.118, unless the amendment would be futile." *Shah*, 324 Mich App at 209 (quotation marks and citation omitted); see also MCR 2.116(I)(5) ("If the grounds asserted are based on subrule (C)(8), (9), or (10), the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified."). An amendment to a pleading "is futile if it merely restates the allegations already made or adds allegations that still fail to state a claim." *Lane v KinderCare Learning Ctrs, Inc*, 231 Mich App 689, 697; 588 NW2d 715 (1998).

Under MCR 2.118(A)(2), a party may amend a pleading by leave of the court and such "[l]eave shall be freely given when justice so requires." *Shah*, 324 Mich App at 209 (quotation marks and citation omitted; alteration in original). Motions to amend should only be denied for "the following particularized reasons: (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party by virtue of allowance of the amendment, or (5) futility of the amendment." *Lane*, 231 Mich App at 697. Delay alone, however, "does not warrant denial of a motion to amend." *Weymers v Khera*, 454 Mich 639, 659; 563 NW2d 647 (1997).

[A] trial court may find prejudice when the moving party seeks to add a new claim or a new theory of recovery on the basis of the same set of facts, after discovery is closed, just before trial, and the opposing party shows that he did not have reasonable notice, from any source, that the moving party would rely on the new claim or theory at trial. [*Id*. at 659-660 (footnote omitted).]

-7-

"The trial court must specify its reasons for denying leave to amend, and the failure to do so requires reversal unless the amendment would be futile." *PT Today*, 270 Mich App at 143.

Under MCR 2.118(A)(4), a motion to amend a complaint must be made "in writing." MCR 2.118(A)(4). This Court examined the writing requirement of MCR 2.118(A)(4) in *Lown v JJ Eaton Place*, 235 Mich App 721; 598 NW2d 633 (1999). In *Lown*, the defendant moved for summary disposition under MCR 2.116(C)(10) and, the "plaintiff anticipated that she would be seeking leave to amend her complaint" in her response to the defendant's motion for summary disposition. *Lown*, 235 Mich App at 725. The plaintiff orally requested leave to amend her complaint at the hearing on the defendant's motion for summary disposition, but the trial court denied the plaintiff's request at the same hearing and granted summary disposition to the defendant. *Id*. This Court affirmed the trial court's denial of the plaintiff's request to amend the complaint because the plaintiff's "request to amend was oral, and [the] plaintiff never offered any written amendments." *Id*. at 726. As such, the plaintiff failed to comply with MCR 2.118(A)(4), which requires amendments to be in writing. MCR 2.118(A)(4); *Lown*, 235 Mich App at 726. Furthermore, by characterizing the plaintiff's request to amend the complaint as oral, this Court implicitly held that the plaintiff's statement in her response to the defendant's motion for summary disposition that she would seek leave to amend did not fulfill MCR 2.118's requirements. See *Lown*, 235 Mich App at 725-726. The importance of the submission of a written proposed amended complaint has since been reiterated in *Anton, Sowerby & Assoc, Inc v Mr C'S Lake Orion, LLC*, 309 Mich App 535, 551; 872 NW2d 699 (2015), in which this Court held that "[i]f a plaintiff does not present its proposed amended complaint to the court, there is no way to determine whether an amendment is justified."

The trial court granted summary disposition to defendants under MCR 2.116(C)(8). In such a situation, a trial court *must* give a party an opportunity to amend its pleadings. *Shah*, 324 Mich App at 209. Plaintiffs, however, failed to file proposed amended complaints or written motions to amend their complaints. Instead, like the plaintiff in *Lown*, plaintiffs stated that they "would seek leave to amend" in their response to defendants' motion for summary disposition if the trial court granted summary disposition to defendants. Plaintiffs failed to pursue the issue further and did not file proposed amended complaints or motions to amend the complaints with the trial court. Because plaintiffs failed to file motions to amend the complaints and proposed amended complaints with the trial court, they failed to comply with MCR 2.118(A)(4). See *Lown*, 235 Mich App at 725-726. Additionally, because plaintiffs failed to present proposed amended complaints to the trial court, the trial court had "no way" to determine whether plaintiffs' proposed amended complaints were justified. See *Anton*, 309 Mich App at 551.

Plaintiffs additionally argue that it would be unreasonable to require them to move to amend their complaints before the trial court granted summary disposition to defendants because plaintiffs could not have known that such an action was necessary until after the trial court granted summary disposition to defendants and dismissed the case. Plaintiffs, however, failed to cite any legal authority to support this argument and this Court may consider the argument abandoned. *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 220; 761 NW2d 293 (2008). Even if plaintiffs' argument that they had no reason to know they should have moved to amend their complaints before the trial court granted summary disposition to defendants was not abandoned, however, it would still fail.

Plaintiffs may file motions to amend their complaints when they respond to a defendant's motion for summary disposition. See, e.g., *Sharp v City of Lansing*, 238 Mich App 515, 517-518, 523; 606 NW2d 424 (1999) (the defendant moved for summary disposition and, as that motion was pending, the plaintiff filed a motion to amend his complaint). Furthermore, plaintiffs may also file motions to amend their complaints after a trial court grants summary disposition to defendants. See, e.g., *Jackson v White Castle Sys Inc*, 205 Mich App 137, 139, 142-143; 517 NW2d 286 (1994) (after the trial court granted summary disposition to the defendant, the plaintiff filed a motion to amend his complaint with a motion for reconsideration). Thus, plaintiffs could have filed motions to amend their complaints either before or after the trial court granted summary disposition to defendants. Plaintiffs' choice to solely pursue an MCPA claim was strategic; their decision to not proactively amend their complaints proved to be a bad strategy, but that does not mean that this Court's established rule requiring plaintiffs to file motions to amend their complaints is unreasonable. Thus, the trial court did not abuse its discretion by denying plaintiffs' request to amend their complaints.

Because plaintiffs failed to move to amend their complaints we need not address whether the trial court should have granted plaintiffs' request to amend their complaints on the merits. We note, however, that if plaintiffs had moved to amend their complaints the trial court should have granted their motion to amend their complaints. Detroit's ordinances did not necessarily bar plaintiff's proposed claims that defendants breached Truth in Renting Act, MCL 554.631 *et seq.*, and the warranty of habitability. As such, the request to amend plaintiffs' complaints was not necessarily futile. We note, however, that without a proposed amended complaint we lack the information necessary to determine whether plaintiffs' amended complaints would have been futile. Furthermore, plaintiffs did not move to amend their complaints in bad faith and if the trial court granted plaintiffs leave to amend their complaints it would not have prejudiced defendants because the parties were not on the eve of trial, which was scheduled to begin almost three months after plaintiffs' request to amend. See *Weymers*, 454 Mich at 659-660. Finally, because this was the first and only time that plaintiffs requested leave to amend their complaints, plaintiffs' request necessarily was not a "repeated failure to cure deficiencies by amendments previously allowed." See *Lane*, 231 Mich App at 697. As such, if plaintiffs had properly moved to amend their complaints the trial court should have granted them leave to do so.

Affirmed.

/s/ David H. Sawyer
/s/ Colleen A. O'Brien
/s/ Anica Letica